COMMONWEALTH *vs*. S. JOSEPH SCHMUKLER.

Plymouth. May 5, 1986. — June 23, 1986.

Present: GRANT, KASS, & FINE, JJ.

*Embezzlement. Conversion. Fraud. Conservator. Fiduciary. Practice, Criminal,* Instructions to jury, Verdict. *Evidence,* Reputation.

At the trial of an indictment under G. L. c. 266, § 57, charging that the defendant, as conservator for an incompetent elderly person, "did embezzle or fraudulently convert or appropriate money held or possessed by him for the use or benefit, either wholly or partially, of [the ward] to or for his own use or benefit . . . ," the judge's failure to instruct the jury that "fraudulent intent" was an element of the offense charged was error creating a substantial risk of a miscarriage of justice, entitling the defendant to a new trial. [434-437]

At the retrial of a criminal case the defendant was to be allowed a full opportunity to establish the required foundation for admission of evidence of his reputation in the community for truthfulness and good character. [437-438]

INDICTMENT found and returned in the Superior Court Department on October 17, 1983.

The case was tried before *Chris Byron,* J.

*Brownlow M. Speer,* Committee for Public Counsel Services, for the defendant.

*Ann E. Rascati,* Assistant District Attorney, for the Commonwealth.

FINE, J. Between November 4, 1976, and August 6, 1982, having been duly appointed by a Probate Court, the defendant served as conservator for an incompetent elderly person. Alleged irregularities in the way the defendant handled the ward's financial affairs resulted in an indictment charging that

the defendant, in violation of G. L. c. 266, § 57, "did embezzle or fraudulently convert or appropriate money held or possessed by him for the use or benefit, either wholly or partially, of [the ward] to or for his own use or benefit . . . ." [1] The defendant concedes that the evidence presented to the jury at his trial in the Superior Court was sufficient to overcome a motion for a required finding of not guilty.[2] He maintains on appeal that his conviction should be reversed, however, because among other things, the judge prejudicially misconstrued the statute under which he was charged and incorrectly instructed the jury in a manner consistent with that misconstruction. The defendant claims that the judge erred in construing the statute to mean that fraudulent intent was not an element of the offense. We agree with the defendant that because of the erroneous instructions, he is entitled to a new trial.

The trial was a lengthy one. Before closing arguments, the defendant moved to have the Commonwealth elect one allegation from among the three in the indictment: embezzlement,

---

[1] General Laws c. 266, § 57, provides: "A . . . conservator . . . who embezzles or fraudulently converts or appropriates money, goods or property held or possessed by him for the use or benefit, either wholly or partially, of some other person . . . to or for his own use or benefit or to or for the use or benefit of any person other than such person . . . or who otherwise fraudulently disposes of or destroys such property, shall be punished . . . ."

[2] The evidence consisted of numerous instances in which the defendant used funds belonging to the ward, a nursing home patient, for his personal benefit. There was also evidence concerning the sale of the ward's house. The defendant's petition for a license to sell the property was allowed in the Probate Court. The proceeds of the sale finally credited to the ward amounted to considerably less than half the sale price. The remainder of the proceeds went to pay the unusually large fee charged by the attorney whom the defendant had retained to represent him in the real estate transaction. The same attorney had received a fee for the legal work required to establish the conservatorship. There is no indication that criminal or disciplinary charges were brought against the attorney. Nor do we know whether, in these circumstances, it would have been appropriate to bring charges against him. We merely reflect that if attorneys fraudulently misuse funds of others, they should not be treated more favorably than nonlawyers who do the same. Few things would make citizens more cynical about our justice system than the perception that attorneys receive that kind of special consideration. Cf. *Lewis* v. *National Shawmut Bank,* 303 Mass. 187, 191 (1939).

fraudulent conversion, and appropriation. After some discussion, the judge stated: "I'm not going to instruct the jury as to embezzlement or fraudulent conversion, but simply that the statute provides that a conservator who appropriates money held or possessed by him for the use or benefit of some other person to or for his own use or benefit shall be punished." In his jury instructions, the judge defined the offense in the same words, adding, "That's simply what it says." After explaining about conservators to the jurors, the judge recited the elements of the offense which the Commonwealth had to prove beyond a reasonable doubt: first, that the defendant was appointed to serve as conservator; second, that he had in his possession money or property of the ward; and third, "that he appropriated it, all or part of the property to his own use, or to the use of some other person. Now, to appropriate, as used in this statute, means to take it without permission . . . . That's simply what it means." The judge then proceeded to discuss a conservator's right to compensation for his services. Absent from the instruction was any mention of fraudulent intent as a required element of the offense.

There is an ambiguity in the statute. In the phrase "embezzles or fraudulently converts or appropriates," "fraudulently" may modify only "converts," or it may modify both "converts" and "appropriates." The words and punctuation are such that the sentence may be read either way. As the statute is penal, it must be strictly construed, and ambiguities must be resolved in favor of the defendant. *Commonwealth* v. *Federico,* 354 Mass. 206, 207 (1968). *Commonwealth* v. *Conway,* 2 Mass. App. Ct. 547, 552 (1974). Embezzlement requires a fraudulent intent. See *Commonwealth* v. *Barry,* 124 Mass. 325, 327 (1878). As fraud is an element of both embezzlement and fraudulent conversion, one would expect it also to be an element of the third type of conduct referred to in the series. The statute itself, by referring later to one "who otherwise fraudulently disposes of . . . property" (G. L. c. 266, § 57), is further indication that it applies only to fraudulent conduct. See

*Commonwealth* v. *Dow,* 217 Mass. 473, 475-476 (1914) (interpreting the phrase "fraudulently lends, invests or appropriates the money or disposes of the property of such corporation, or fraudulently converts it, shall be punished . . ." in R. L. c. 208, § 62 (1902) [now G. L. c. 266, § 74], to require a fraudulent intent).

It is not only those principles of statutory construction, however, which require that the statute be read to include fraudulent intent as an element of the offense. Even more persuasive is a consideration of what acts would be subject to criminal penalty under G. L. c. 266, § 57, if fraudulent intent need not be proved. "To appropriate" generally means "to claim or use as if by an exclusive or preeminent right . . ." or "to take without permission." Webster's Third New International Dictionary 106 (1971). See also *Commonwealth* v. *Dow,* 217 Mass. at 476. Applying that definition, a conservator would run afoul of the statute whenever he reimbursed himself for expenditures made on behalf of the ward or paid himself a fee, even if the Probate Court in the allowance of an account should subsequently find the expenses or fees to be reasonable and proper charges against the ward's estate. Such a result would be absurd. A conservator is entitled to be paid a reasonable fee for services and to reimbursement of reasonable expenses incurred in carrying out his duties. See G. L. c. 206, § 16. Even if a conservator were to appropriate funds of the ward to himself for fees or expenses later found by a Probate Court judge to be unreasonable, in the absence of a fraudulent intent, a conservator ought only to be liable civilly. See G. L. c. 206, §§ 1 & 2. Were it otherwise, persons would be overly cautious about serving as fiduciaries. We do not imply that a conservator may use funds of the ward other than in the best interests of the ward, that he may mingle his funds with those of the ward, or that he is not bound to account to the Probate Court. Nor do we mean to imply that a jury could not have found that the defendant had a fraudulent intent on the unusual and compelling evidence offered by the Commonwealth in this case.

The defendant did not object to the instructions. We must determine, therefore, whether the faulty instructions created a

substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). As we have indicated, the instructions were susceptible of an interpretation that the jury could have found the defendant guilty of acts which were not criminal. As a practical matter, the outcome depended upon the jury's belief as to the defendant's state of mind. We think there was a substantial risk of a miscarriage of justice because of the erroneous instructions. Compare *Commonwealth* v. *Dunphy,* 377 Mass. 453, 458-459 (1979); *Commonwealth* v. *Niziolek,* 380 Mass. 513, 526-529 (1980); *Commonwealth* v. *Brattman,* 10 Mass. App. Ct. 579, 582-586 (1980). This is not a case in which the defendant, in addition to failing to object, actually invited the error. True, the defendant requested that the Commonwealth be required to choose among the three possible theories in the indictment, and, in response to that motion, the judge indicated that he would instruct the jury only on the "appropriation" language of the indictment. The defendant's request, however, had nothing to do with the required elements of the offense.

The judge submitted the case to the jury for a general verdict. In addition, as a separate matter and upon separate instructions, he submitted six special questions.[3] The jury responded "Yes" to the sixth question, which asked: "Did the defendant intend to take the money for his personal use, knowing that it was in excess of a reasonable fee?" Although the question raised the issue of fraudulent intent, the jury's affirmative response did not cure the error of the instructions given in connection with

---

[3] The special questions were as follows:

"(1) Was the defendant appointed conservator of [the ward]?

"(2) Did the defendant have in his possession or control money or other property of the ward entrusted to him as conservator?

"(3) Did the Probate Court allow the defendant a fee as compensation for services?

"(4) Did the defendant use money of the ward for the defendant's personal use?

"(5) Did the money taken for the defendant's personal use exceed what you, the jury, find to be a fair and reasonable amount for compensation as a conservator?

"(6) Did the defendant intend to take the money for his personal use, knowing that it was in excess of a reasonable fee?"

the general verdict. This is because the jurors were not instructed with regard to the special questions that the Commonwealth had the burden of proof of the fraud or that the quantum of proof required was proof beyond a reasonable doubt. Should the case be retried, special questions, if used at all (see Mass.R.Crim.P. 27(c), 378 Mass. 897 [1979], and Reporters' Notes to Mass.R.Crim.P. 27(c), Mass. Ann. Laws, Rules of Criminal Procedure at 444 [1979]), should be used very cautiously. See *United States* v. *Spock,* 416 F.2d 165, 180-183 (1st Cir. 1969). In particular, special questions "must avoid any 'tendency to lead the jurors step by step to a verdict of guilty. [Citation omitted.]' *Commonwealth* v. *Golston,* 373 Mass. 249, 260-261 (1977), cert. denied, 434 U.S. 1039 (1978)." *Commonwealth* v. *Licciardi,* 387 Mass. 670, 676 (1982). See also *Heald* v. *Mullaney,* 505 F.2d 1241, 1245 (1st Cir. 1974), cert. denied, 420 U.S. 955 (1975) (special questions could " 'catechize' a reluctant juror away from an acquittal towards a seemingly more 'logical' conviction").

One final issue raised by the defendant on appeal relates to his efforts to have two witnesses testify to his reputation in the community for truthfulness and good character. "The rule is that 'the defendant in a criminal case may put in evidence his general good reputation in regard to the elements of character involved in the commission of the crime charged against him, for the purpose of establishing the improbability of his having done the wrong imputed to him.' " *Commonwealth* v. *Belton,* 352 Mass. 263, 268, cert. denied, 389 U.S. 872 (1967), quoting from *Commonwealth* v. *Nagle,* 157 Mass. 554, 554 (1893). The particular offense charged was one in which such evidence could have played a decisive role. In addition, because the defendant testified and was cross-examined, he could offer evidence of his reputation for truthfulness and veracity. *Commonwealth* v. *Sheline,* 391 Mass. 279, 287-289 (1984), and 298-299 (Abrams, J., concurring). The trial judge may exclude such evidence "if he determines that it is based on the opinions of too limited a group" or if a foundation is otherwise lacking. *Commonwealth* v. *LaPierre,* 10 Mass. App. Ct. 871 (1980). See also *Commonwealth* v. *Belton,* 352 Mass. at 269; *Common-*

*wealth* v. *Gomes,* 11 Mass. App. Ct. 933 (1981). Otherwise, the trial judge has no discretion to exclude such reputation evidence. See *Commonwealth* v. *Leonard,* 140 Mass. 473, 479-480 (1886); Liacos, Massachusetts Evidence 411-412, see also 417-420 (5th ed. 1981 & Supp. 1985). When such evidence is admitted in a criminal trial, an instruction as to how the jury should treat such evidence is appropriate. *Commonwealth* v. *Simmons,* 383 Mass. 40, 42-43 (1981). *Commonwealth* v. *Dilone,* 385 Mass. 281, 288-289 (1982).

The problem here was that the judge sustained objections to questions put to the witnesses expected to testify about the defendant's reputation which could have elicited responses sufficient to lay the required foundation. At any retrial, the defendant should be allowed a full opportunity to lay a foundation for admission of reputation evidence.

We reverse the judgment, set aside the verdict, and remand the case to the Superior Court for a new trial.

*So ordered.*