COMMONWEALTH *vs.* THOMAS E. GARRITY, THIRD.

No. 95-P-2183.

Middlesex. May 15, 1997. - August 12, 1997.

Present: WARNER, C.J., KASS, & JACOBS, JJ.

*Fiduciary. Embezzlement. Evidence,* Exculpatory. *Practice, Criminal,* Indict-
ment, Grand jury proceedings, Required finding, Instructions to jury,
Presumptions and burden of proof. *Grand Jury. Executor and Administra-
tor. Intent. Superior Court,* Jurisdiction.

A criminal defendant's motion to dismiss the indictment against him on the
ground that the Commonwealth withheld certain allegedly exculpatory
evidence from the grand jury was correctly denied, where the evidence
was not exculpatory and in any event could have had only a negligible ef-
fect on the grand jury's decision to indict. [352-353]
At the trial of an indictment alleging fiduciary embezzlement by an executor
(G. L. c. 266, § 57) in which the defendant raised as a defense an
indemnity agreement under which, allegedly, payments to him were made,
as well as a defense that he relied on the advice of counsel, the evidence
was sufficient to support the jury's reasonable inference that the defendant
possessed the requisite fraudulent intent to warrant conviction. [353-356]
At the trial of an indictment for fiduciary embezzlement, the judge correctly,
clearly, and thoroughly instructed the jury on the elements, including the
element of fraudulent intent [356-358], and the judge's instructions to the
jury on honest and reasonable mistake as a defense were correct and did
not shift the burden of proof [358-359].
There was no merit to a criminal defendant's claim that the availability of a
civil remedy for his fiduciary embezzlement deprived the Superior Court
of jurisdiction over a criminal proceeding for the same acts. [359-360]

INDICTMENT found and returned in the Superior Court Depart-
ment on March 17, 1993.

A pretrial motion to dismiss was heard by *Katherine Liacos
Izzo,* J., and the case was tried before *Margot Botsford,* J.

*Irving Marmer* for the defendant.

*Rosemary Daly,* Assistant District Attorney, for the Com-
monwealth.

WARNER, C.J. A Superior Court jury convicted the defendant

of fiduciary embezzlement (G. L. c. 266, § 57). On appeal, he argues that the indictment was defective due to the Commonwealth's failure to present potentially exculpatory evidence to the grand jury. He also claims that the trial judge erred in denying his motion for a required finding of not guilty and that the instructions on fiduciary embezzlement were deficient. Finally, the defendant maintains that the Superior Court lacked jurisdiction over the entire matter in light of the availability of sanctions against the defendant in the Probate Court. We affirm.

Considered in the light most favorable to the Commonwealth, the jury could have found the following facts beyond a reasonable doubt.[1] *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). On December 25, 1986, the defendant's father, T. Edmund Garrity, died leaving an estate valued at approximately $467,000. In his will, he left one third of his estate to his second wife and the remaining two thirds in equal shares to his seven surviving children, the eldest of whom was the defendant. The defendant was named executor of the estate and was appointed to serve in that capacity on January 12, 1987.

Prior to his death, T. Edmund Garrity had been a trustee of the Helen B. Garrity donative trust (the trust), established by his sister, which included among its assets a two-family residential building located on Townsend Road in Belmont (the Townsend Road property). The elder Garrity never had a financial interest in the trust, however, and the beneficiaries were the defendant and his siblings, the nieces and nephews of Helen B. Garrity.

Sometime in November, 1985, the trust retained a contractor to remove and replace urea formaldehyde foam insulation (UFFI) that had been discovered at the Townsend Road property. In January, 1986, the trustees entered into a purchase and sale agreement with the defendant's business partner, Donald W. Ryan, in which Ryan agreed to purchase the property for $230,000. Subsequently, the trustees executed an agreement providing for Ryan's indemnification against "any and all claims of injury, sickness or illness or other damage to any person or entity [bearing] a proximate and direct causal relationship to the [UFFI] and [resulting] in the issuance of a judgment in favor of any such person or entity after a contested trial." The agreement also required Ryan to notify the trustees of any claims that might trigger the agreement and to afford the trust the opportunity to defend against them.

[1]The parties stipulated to some of the facts that are set forth.

Title to the property was conveyed to Ryan and the defendant as tenants in common on June 13, 1986.[2] Ryan subsequently assigned the indemnity agreement to himself and the defendant.[3] Shortly after purchasing the property, the partners began renovations, intending to resell the property at a profit. During the winter of 1987, however, water pipes in the residence froze and burst. As a result, the house incurred extensive water damage, and the presence of additional UFFI was revealed. The defendant and Ryan thereafter removed and replaced the remaining UFFI and proceeded with the planned renovations.

Approximately two years after T. Edmund Garrity's death, the defendant's siblings had yet to receive any information about the distribution of estate funds and hired an attorney to force the defendant to provide an accounting. The defendant filed the accounting, which covered the period between December 25, 1986, and December 2, 1988, on or about January 20, 1989. One of his brothers took exception to a withdrawal in the amount of $38,589, which was described as a "distribution to heirs." The beneficiaries of the estate subsequently petitioned the Probate Court for the removal of the defendant as executor. The defendant resigned while the petition was pending and was replaced by Richard Spillane, a certified public accountant known to several members of the family.

Spillane assembled the available records and attempted to determine the financial status of the estate. According to his calculations, only $3,000 in cash remained in the estate; $300,000 was missing from the cash accounts, and there were no contemporaneous records explaining the withdrawals. On November 29, 1990, Spillane contacted the defendant regarding the discrepancy. The defendant claimed that the money had been used to make repairs to the Townsend Road property. On or about October 14, 1992, a second accounting was filed. It covered the period from December 2, 1988, to December 5, 1990, and described withdrawals totalling $279,469.62 as "Reimbursements per Indemnification Agreement." Spillane reported his findings to the remaining beneficiaries, who

---

[2] The record is unclear as to exactly how the defendant became a buyer, but nothing turns on this.

[3] There is a question whether Ryan had the authority to make such an assignment and whether the defendant, therefore, would have been entitled to seek indemnification under any set of circumstances. We assume for purposes of this appeal that the assignment was valid.

contacted the district attorney. The resultant investigation revealed that between September, 1988, and October, 1990, the defendant had made twelve separate withdrawals from the estate's accounts totalling approximately $341,000. The withdrawals ranged from $5,100 to over $100,000.

At no time did the defendant notify any of the other beneficiaries under the will that he intended to reimburse himself from the estate pursuant to the indemnity agreement, nor did he ever request their permission to do so. Moreover, no contemporaneous records were made with respect to the amounts withdrawn or the purpose of the expenditures, and no documentation was ever produced to establish a direct correlation between the amounts withdrawn and the defendant's out-of-pocket expenses.

At trial, the defendant testified that the withdrawals were made pursuant to the indemnity agreement. He stated that he believed his father was personally liable under the agreement and, therefore, that he, as executor, was entitled to reimburse himself and Ryan for any expenses they incurred as a result of the presence of UFFI at the Townsend Road property. He also claimed to have written the checks only after seeking the advice of two attorneys, both of whom advised him that he was within his rights as executor of the estate.

1. *The indictment.* Before trial, the defendant moved to dismiss the indictment against him on the ground that the Commonwealth withheld certain exculpatory evidence from the grand jury. The grand jury were never informed of the existence of the indemnity agreement or the defendant's purported reliance upon it, and the defendant contends that this omission impaired the integrity of the proceedings. We disagree.

" 'Prosecutors are not required in every instance to reveal all exculpatory evidence to a grand jury.' *Commonwealth* v. *McGahee*, 393 Mass. 743, 746 (1985)." *Commonwealth* v. *Trowbridge*, 419 Mass. 750, 753 (1995). Evidence must be disclosed, however, if it would " 'greatly undermine the credibility of evidence likely to affect the grand jury's decision to indict.' " *Ibid.*, quoting from *Commonwealth* v. *McGahee, supra.* The question, therefore, is whether the grand jury's decision to indict would have been different had they been aware of the existence of the indemnity agreement. See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 621 (1986); *Commonwealth* v. *Drumgold*, 423 Mass. 230, 235 (1996). The grand jury were

informed that the defendant, as executor of his father's estate, had withdrawn approximately $341,000 over a three and one-half year period and deposited most of the funds into his personal bank account or accounts under his control. They were also aware that the defendant never sought permission from the other beneficiaries, or informed them of his intentions, before making the withdrawals. Although the grand jury were not aware of the existence of the indemnity agreement on which the defendant purportedly relied in making the withdrawals, we conclude that the additional "information would not have greatly undermined the credibility of evidence against the defendant, and would not have affected significantly the grand jury's decision to indict." *Commonwealth* v. *Trowbridge*, 419 Mass. at 754.

First, for reasons discussed later in this opinion, the agreement did not authorize the defendant to reimburse himself from the estate for the expenses he incurred on the Townsend Road property. Consequently, the existence of the indemnity agreement did not constitute "exculpatory evidence." Moreover, the total amount withdrawn by the defendant greatly exceeded his claimed losses.[4] Finally, even after learning of the indemnity agreement and hearing testimony from the defendant, his business partner, and one of his lawyers, supporting the defendant's claim that he believed he was entitled to reimburse himself pursuant to the agreement, a jury of twelve found him guilty beyond a reasonable doubt. Under these circumstances, it is reasonable to assume that disclosure of the existence of the indemnity agreement "to a grand jury seeking only *probable cause* would have had a negligible effect on their decision to indict" (emphasis in original). *Commonwealth* v. *LaVelle*, 414 Mass. 146, 151 n.2 (1993): *Commonwealth* v. *Drumgold*, 423 Mass. at 238-239.

2. *Motion for a required finding of not guilty.* The defendant's motion for a required finding of not guilty at the close of the Commonwealth's case and, again, at the close of the evidence, was denied. The motion raised the issue of the sufficiency of the evidence on the element of fraudulent intent. There was no error.

Fiduciary embezzlement by an executor requires a showing that: (1) the defendant was the executor during the relevant time

---

[4]The defendant withdrew more than $341.000 but was eventually able to document less than $280,000 in actual expenses.

period; (2) he had in his possession money, goods or property for the use or benefit either in whole or in part of some other person (in this case, the beneficiaries of the estate of T. Edmund Garrity); (3) he converted or appropriated the money or property to his own use or benefit or the benefit of a third person without the consent of the beneficiaries and without the legal right or legal authority to do so; and (4) he took such action with fraudulent intent. G. L. c. 266, § 57. *Commonwealth* v. *Schmukler*, 22 Mass. App. Ct. 432, 434-435 (1986). The defendant maintains that he was justified in using the estate's funds to reimburse himself for expenses incurred as a result of the presence of UFFI in the Townsend Road property under the terms of the indemnity agreement and argues, in the alternative, that his consultation with two lawyers prior to making the withdrawals precluded any finding that he possessed the fraudulent intent necessary to sustain his conviction.

The indemnity agreement provided that the defendant and Ryan would be indemnified against claims brought against them for injuries or damages caused by the presence of UFFI in the Townsend Road property in the event four specific conditions were satisfied: (1) there was an actual claim of injury or damage; (2) the claim bore a direct causal relationship to the presence of UFFI; (3) the claim resulted in the issuance of a judgment after a contested trial; and (4) the trustees were notified of the claim and provided with the opportunity to defend against it. None of these conditions existed at the time the defendant made the contested withdrawals.

First and most important, no claim was ever brought against the defendant or Ryan as a result of the presence of UFFI in the Townsend Road property. Rather, the "losses" the defendant claims to have suffered were the result of the extensive renovations, including, but not limited to the removal of UFFI, undertaken after water damage revealed the presence of insulation that had not been detected during the initial removal and replacement. Moreover, the amount expended included not only the costs directly related to the removal and replacement of the UFFI, but numerous additional expenses, including the entire cost of renovating the house, monthly mortgage payments, and insurance premiums, taxes, and utilities.

Because the first prerequisite, that of an actual claim, was never met, the additional requirements could not be satisfied. Moreover, T. Edmund Garrity was not personally liable under

the terms of the agreement and, therefore, the defendant was not entitled to use the estate's funds to indemnify himself under any circumstances. The Helen B. Garrity trust was a donative trust established for the benefit of the grantor's nieces and nephews and expressly provided that the trustees would be personally liable for their acts or omissions only if undertaken in bad faith. The elder Garrity never held any beneficial interest in the trust, and the indemnity agreement was executed by the trustees on behalf of the trust and not individually. See G. L. c. 203, § 14A (no personal liability for trustees unless otherwise provided in contract or trustee fails to reveal his representative capacity). See also *Apahouser Lock & Sec. Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988) (Section 14A exemption from liability applies to trustees "acting under a trust of the donative type, associated with probate practice").

The defendant also argues that, even if he was not entitled to reimbursement under the agreement, his reliance on the advice of counsel constitutes a complete defense to the charge against him. In order to establish the advice-of-counsel defense, however, a defendant "must show that: (1) he is acting in good faith in the belief that he has good cause for his action and is not seeking an opinion in order to shelter himself; (2) he has made a full and honest disclosure of all the material facts within his knowledge or belief; (3) he is doubtful of his legal rights; (4) he has reason to know that his counsel is competent; (5) he honestly complied with his counsel's advice; and (6) his counsel is of such training and experience that he is able to exercise prudent judgment in such matters." *G.S. Enterprises, Inc.* v. *Falmouth Marine, Inc.*, 410 Mass. 262, 275 (1991). Here, the defendant testified that he consulted two attorneys and that both of them assured him that as executor, his actions were permissible. One of those attorneys, who is also the defendant's appellate counsel, testified that, although he was never specifically asked whether the defendant could withdraw funds from the estate in order to reimburse himself for expenses he had incurred as a result of the presence of the UFFI in the Townsend Road property, he did advise the defendant that, as executor, it was up to him to determine which of his father's contracts he wished to honor.[5] He further acknowledged that he rendered this advice without having reviewed the trust document.

---

[5]The second attorney upon whom the defendant claimed to have relied died prior to the defendant's trial.

On this testimony, it is far from clear that the defendant was entitled to an instruction on the advice-of-counsel defense, let alone a required finding of not guilty. See *ibid.* Nevertheless, the judge afforded him the benefit of the charge. Specifically, she instructed the jury that, in determining whether or not the Commonwealth had proved the element of fraudulent intent beyond a reasonable doubt, they could consider the defendant's claim that he relied on the advice of counsel in making the withdrawals at issue and carefully and completely enumerated each of the elements of the advice-of-counsel defense.

Moreover, the Commonwealth presented sufficient evidence on the issue of fraudulent intent to preclude the granting of defendant's motion for a required finding. "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence. Knowledge or intent, however, may be proved by inference from all the facts and circumstances developed at trial. *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980)." *Commonwealth* v. *Costa*, 407 Mass. 216, 225 (1990). "The inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable." *Ibid.*

Here, the evidence revealed that the defendant withdrew over $341,000 from his father's estate without providing any contemporaneous documentation. He failed to seek permission from the other beneficiaries or even to inform them of his intentions. The estate ledgers did not reflect the reasons for the withdrawals and the defendant did not mention the indemnity agreement or the Townsend Road property until he had resigned as executor and was pressed by Spillane to account for the missing funds. Indeed, during his tenure as executor, the defendant never filed an accounting with the Probate Court covering the period during which the great majority of withdrawals were made. Moreover, he did not step down until the beneficiaries demanded that he do so and, when he did resign, the cash assets of the estate were virtually depleted. Finally, the defendant never sought reimbursement directly from the trust, in spite of the fact that some cash remained in the trust bank accounts until well after he began withdrawing funds from the estate. Under these circumstances, the jury could reasonably have inferred that the defendant possessed the requisite fraudulent intent. See *ibid.*

3. *Jury instructions.* The defendant next challenges the

judge's instructions to the jury in several respects. First, he claims that the portion of the charge dealing with the distinction between general and specific intent confused the jury. Having reviewed the judge's instructions, we discern no error.

The judge properly instructed the jury on the elements of fiduciary embezzlement, including the element of fraudulent intent. When explaining the type of intent required to sustain a conviction for fiduciary embezzlement, the judge explained that there were two kinds of intent, general and specific. She then defined general intent.[6] Next, she explicitly told the jury that general intent was not what the Commonwealth was required to prove in this case, but rather, that specific intent was required. She then went on to describe specific intent in detail:

> "What is required for the Commonwealth to prove here is specific intent. A specific fraudulent intent . . . that [the defendant] did specifically focus and concentrate and take these actions in a fraudulent manner . . . [and] not by accident, mistake or otherwise. That there was a specific concentrating and focusing of his mind to do these actions in a fraudulent manner . . . .

> "To act with fraudulent intent in this context means that [the defendant] had the specific intent to gain some undue advantage for himself or to injure or harm some other person by means of a representation or representations that he knew to be false when he made them or by an act or acts which he took knowing them to be wrongful and in violation of an affirmative duty that he had.

> "So, what the Commonwealth must prove is that Thomas Garrity, the defendant, embezzled or converted or appropriated property belonging to the estate with the specific intent to gain some advantage for himself or to harm somebody else and that he did so knowing that it

---

[6]The judge stated:

"General intent is often referred to as reflexive action. You intend to do something but you don't focus or concentrate on that particular act. An example might be walking up stairs or sitting down in a chair."

was wrong to do so or that it was in violation of his duties as an executor to the estate.''

With this correct, clear, and thorough instruction, no reasonable juror could have been misled into believing that the defendant could be convicted of fiduciary embezzlement in the absence of a finding that he possessed specific fraudulent intent. Contrast *Commonwealth* v. *Schmukler*, 22 Mass. App. Ct. at 434-435.

The defendant next takes issue with the fact that the judge instructed the jury that as ''a matter of law the [indemnity] agreement did not create a personal obligation on the part of T. Edmund Garrity . . . [or] on the part of his estate.'' She went on to emphasize, however, that the defendant could not be convicted if the jury found that he honestly and reasonably (although mistakenly) believed that he was entitled to take the money.[7] As previously stated, the judge also told the jury that they could consider the defendant's alleged reliance on the advice of counsel in determining whether he had a good faith belief in the appropriateness of his actions.

The defendant argues that, because the judge prefaced the instruction on honest mistake by telling the jury that the indemnity agreement did not impose liability on the estate, she impermissibly shifted the burden of proof to the defendant to prove that he did have an honest and reasonable belief that his actions were justified. He further argues that the instruction, in essence, rendered that task impossible.

'' '[T]he construction of an unambiguous written contract . . . [is] a pure question of law' '' for the court. *Daley* v. *J.F. White Contr. Co.*, 347 Mass. 285, 288 (1964), quoting from *Taylor* v. *Gowetz*, 339 Mass. 294, 300 (1959). Here, the chal-

---

[7]The judge instructed:

"If a person has an honest, good faith and reasonable belief that he took property under a legal right to do so even though that belief might be mistaken he does not have the requisite fraudulent intent.

"The belief must be held in good faith, the belief that he had the authority to take the property must be honest and that is held in good faith and it must be one that is reasonable in the circumstances. That is, that a reasonably prudent person in the defendant's same position, knowing what the defendant knew and in the same circumstances as the defendant found himself, a reasonable person would reasonably believe that he had the authority to take those funds as reimbursement."

lenged instruction did not shift the burden of proof impermissibly to the defendant. Rather, it accurately reflected the current state of the law in this Commonwealth. See G. L. c. 203, § 14A. See also *Apahouser Lock & Sec. Corp.* v. *Carvelli*, 26 Mass. App. Ct. at 387-389. Throughout the charge the judge unequivocally placed the burden on the Commonwealth to prove every element of the offense beyond a reasonable doubt, including the element of fraudulent intent.[8] A reasonable jury would have understood that, if they found that the defendant relied in good faith on the advice of counsel in appropriating the funds in question, or that, if for any other reason he had an honest and reasonable, although mistaken, belief that he was entitled to take the money from his father's estate, they would have to find him not guilty. See *Commonwealth* v. *Schmukler*, 22 Mass. App. Ct. at 434-435.

4. *Jurisdiction of the Superior Court.* The defendant's final argument raises a challenge to the jurisdiction of the Superior Court. He maintains that, because sanctions against the defendant were available in the Probate Court, the matter should not have been the subject of a criminal prosecution. The argument is without merit.

The Superior Court has original jurisdiction over all crimes. G. L. c. 212, § 6. See *Commonwealth*, v. *Parrotta*, 316 Mass. 307, 310 (1944). Moreover, the discretion to prosecute a criminal case is constitutionally vested in the district attorney. *Commonwealth* v. *Gordon*, 410 Mass. 498, 498 & n.1 (1991) (citing art. 30 of the Massachusetts Declaration of Rights). See also *Commonwealth* v. *Vascovitch*, 40 Mass. App. Ct. 62, 63 (1996) (judicial branch of government may not interfere with the Commonwealth's executive power to prosecute a criminal case). Here, the availability of a monetary or contempt remedy against the defendant in the Probate Court does not alter the fact that a Superior Court jury found beyond a reasonable doubt that the defendant committed the crime of fiduciary embezzlement. Indeed, nearly all criminal acts may also give rise to civil

---

[8]Indeed, the judge told the jury:

"In all of this, of course, it is the Commonwealth's burden to prove that [the defendant] did have the fraudulent intent and, therefore, that he did not have a reasonable and honest and good faith belief that he was — that he had a legal right to withdraw the funds."

causes of action. See, e.g., *Commonwealth* v. *Schmukler*, 22 Mass. App. Ct. at 435 (in the absence of fraudulent intent, a fiduciary may be liable civilly). See also *Commonwealth* v. *Abbott Engr., Inc.*, 351 Mass. 568, 572 (1967) (crime of larceny by false pretenses, as opposed to tort of deceit, requires Commonwealth to prove additional element of intent).

The defendant suggests that the availability of a civil remedy in a particular case operates to deprive the Superior Court of jurisdiction, thereby rendering the prosecution of any criminal offense arising out of the same events impermissible. The consequences of such a rule would be absurd.

*Judgment affirmed.*