## COMMONWEALTH *vs.* JOSHUA J. McKINNON.

Middlesex. January 5, 2006. - March 14, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Self-Defense. Defense of Others. Reasonable Doubt. Practice, Criminal,* Instructions to jury, Reasonable doubt. *Statute,* Construction. *Words,* "Dwelling."

At the trial of criminal complaints charging assault and battery with a danger-ous weapon, arising out of an altercation taking place on an open porch and outside stairs of a house, the judge did not err in denying the defendant's request for a "castle law" instruction when charging the jury on self-defense or defense of another, where the word "dwelling," as used in the castle law statute, G. L. c. 278, § 8A, did not encompass an open porch or outside stairs of a house. [266-268]
At a criminal trial, there was no error in the judge's instructions on defense of another [268] or reasonable doubt [268-269].

COMPLAINTS received and sworn to in the Ayer Division of the District Court Department on September 26, 2001.

The cases were tried before *Paul L. McGill,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Karen Dean-Smith* for the defendant.

*Kimberly A. Rugo,* Assistant District Attorney (*Melissa J. Conroy,* Assistant District Attorney, with her) for the Commonwealth.

IRELAND, J. We transferred this case to this court on our own motion to decide whether the word "dwelling" in the "castle law" statute, G. L. c. 278, § 8A, should be extended to en-compass an open porch and outside stairs of a house. In his ap-peal from his convictions in 2002, of two counts of assault and battery by means of a dangerous weapon, the defendant argues that, in addition to his claim that the trial judge erred in denying his request for a castle law instruction, the judge gave erroneous

instructions on defense of another and reasonable doubt. Because we conclude that G. L. c. 278, § 8A, does not include an open porch or outside stairs of a house, and that there is no merit to the defendant's other claims of error, we affirm the convictions.

1. *Facts and procedural background.* We present the relevant facts, reserving certain details for our discussion of the issues raised. On the evening of August 5, 2001, brothers Derek Morey and Jeffrey Morey, Jr., went to a party at Melissa and Melanie Sullivan's house in Westford.[1] The Morey and Sullivan families were acquainted. Ten to fifteen people, ranging from sixteen to twenty years of age, were at the party, and some were drinking alcohol. Melissa and Melanie lived with their mother, who was not present on the evening of the party.

Derek encountered the twenty year old defendant at the party. Both Melanie and Melissa had known the defendant for a number of years, and considered him "a brother." At the time of this incident, the defendant had been staying with the Sullivans at their house for just under one year. The defendant's one year old daughter was also there that evening, sleeping at the other end of the house.

About two hours after the Moreys arrived at the party, a fight broke out between Derek and another boy. The fight eventually included Jeffrey and some of the other guests at the party, but not the defendant.[2] Jeffrey's lip was bleeding badly. After the fight, everyone left, except for Melissa, Melanie, the defendant, and his daughter.

The brothers eventually went to Lowell, where their father (Morey) was staying with friends, and told him what had happened. Morey wanted to talk to Melanie and Melissa's mother about the underage drinking party and the fight that had taken place. Instead of waiting until later to contact the mother, Morey and the boys drove to the Sullivans' house in Westford at approximately 1 A.M.[3] Morey parked in the Sullivans' driveway.

---

[1]Other friends who were with the brothers are not relevant to our analysis.

[2]In fact, the defendant came out of the house and told everyone fighting outside to leave.

[3]The father first had taken the boys to a hospital so that Jeffrey's lip might be stitched, but he and the boys left after being told that the wait would be at

Melissa, who was shutting off the back lights, saw the car driving by the house. She went to the porch and saw the car in the driveway. When she saw Derek getting out of the car, she yelled to Melanie and the defendant, "They're back." Melanie, who was sitting in the kitchen with the defendant, gave him a knife that had been in a bag lying on the kitchen table.

According to Melissa, when Derek saw her, he said, "Tell your brother to come outside." Melissa told Derek to leave. Melissa then saw Morey get out of the car and yell, "Somebody hit my son and you're going to pay." Morey and Derek remained in the driveway. Melissa shut the door, but the defendant grabbed a baseball bat, opened the door, and ran outside. The Sullivan sisters also said that sometime after Derek asked Melissa to have "her brother" come outside, they heard Morey say, "If you don't come out, I'm coming in." The sisters, however, had conflicting stories about where the defendant was when Morey said this. Melissa said the defendant was inside the house. Melanie said the defendant was either in the kitchen, halfway out the door, or outside on the porch. On cross-examination, Melissa stated that Morey and Derek "presumed to walk up my stairs," although she never stated that they actually did walk up the stairs.

During the fight that ensued, both Melissa and Melanie remained inside the house and telephoned the police. Morey raised his arms, and there was conflicting testimony whether he swung at the defendant or was gesturing his surrender. Melissa testified that she thought she saw Morey holding something shiny in his hand, possibly a knife.[4] In any event, a fight began, and the defendant hit Morey with the baseball bat multiple times on his side from his elbow to his hip. While trying to get the bat away from the defendant, Morey grabbed the defendant's shirt. Derek later testified at trial that the defendant hit him over the head with the bat.

Jeffrey, who was still in the car, grabbed a golf club, approached the two men, and hit the defendant with the golf club, leaving an imprint on his back. Morey was eventually able to grab the bat from the defendant and throw it into the woods on

least two hours. The father testified that he intended to return to the hospital.

[4]There was no other evidence that Morey might have been armed.

the side of the house. Morey and the defendant continued fighting, now wrestling on the ground. During the fight, the defendant stabbed Morey in the back of the neck with the knife.

The fight lasted approximately ten minutes. The boys and Morey left the area, and the defendant went back inside the house. Police intercepted the Moreys and confiscated the golf club, and Morey was rushed to Emerson Hospital, where he was treated for the knife wound. He returned a few days later because of a collapsed lung.

Officers who arrived at the house saw the defendant "ranting and raving, yelling about being stabbed and hit with a bat and a golf club, and then . . . [the defendant would say] 'everything's fine, you can leave. We're all set here.' " The day after the assault, police located the baseball bat in the woods beside the house and found the knife in the back yard. A few days later, on August 8, 2001, police interviewed the defendant and showed him the bat and knife that had been found. The defendant told police that the bat belonged to him and that he had used it in the assault. In response to seeing the knife, the defendant said, "[T]hat's my knife. That's the knife that I used to stab the guy."

The defendant was charged with three counts of assault and battery by means of a dangerous weapon, two as to Morey (for using the baseball bat and the knife) and one as to Derek (for using the bat). He was acquitted of the charge as to Derek.

2. *Discussion.* a. *Instruction pursuant to G. L. c. 278, § 8A.* The defendant contends that the judge erred in denying his request for a castle law instruction pursuant to G. L. c. 278, § 8A.[5] He argues that he was entitled to the instruction because he was acting in self-defense or in defense of his surrogate family, and because, under the castle law, he had no duty to retreat

---

[5]General Laws c. 278, § 8A, provides:

> "In the prosecution of a person who is an occupant of a dwelling charged with killing or injuring one who was unlawfully in said dwelling, it shall be a defense that the occupant was in his dwelling at the time of the offense and that he acted in the reasonable belief that the person unlawfully in said dwelling was about to inflict great bodily injury or death upon said occupant or upon another person lawfully in said dwelling, and that said occupant used reasonable means to defend himself or such other person lawfully in said dwelling. There shall be

in these circumstances.[6] He contends that the castle law instruction, if it applied, would have negated the duty to retreat element in the instructions on self-defense and defense of another. He also states that because the castle law's applicability depends on an unlawful presence in the dwelling, the judge erred in denying his request for a defense of property instruction based on trespass.

The defendant argues that the castle law should be expanded to encompass the outside stairs and open porch of the house. We reject these arguments. General Laws c. 278, § 8A, expressly grants a castle law defense to a defendant charged with killing or injuring another person, if that person was *in* the defendant's dwelling, and the defendant acted in the reasonable belief that the person was about to inflict great bodily injury or death. See *Commonwealth* v. *Peloquin*, 437 Mass. 204, 208-209 n.3 (2002) (holding castle law statute "expressly limited to cases of an occupant's self-defense against someone 'unlawfully in [a] dwelling' "). Neither party here claims that Morey, or either of the boys, was *in* the Sullivans' house.

Even assuming that Morey or one of his sons was on the steps of the porch, as the defendant asserts the evidence shows, the defendant is still not entitled to a castle law instruction. We do not agree with the defendant that the term "dwelling" should extend to the outside stairs of the house. As discussed, the plain language of G. L. c. 278, § 8A, limits the defense to an occupant who injures someone unlawfully *in* the dwelling. Open areas are not given the same legal exemptions as the residence or dwelling itself. See *Commonwealth* v. *Peloquin, supra*; *Commonwealth* v. *Bennett*, 41 Mass. App. Ct. 920, 921 (1996).

We also reject the defendant's arguments that on the facts here the porch functioned as "an extension of the living room" and that, because the porch provided direct access to the house, it was a part of the "dwelling." We first note that there was no evidence that the Moreys were on the porch. Moreover, it is of

no duty on said occupant to retreat from such person unlawfully in said dwelling."

[6]The judge gave instructions favorable to the defendant on self-defense and defense of others, discussed *infra*.

no consequence how near or far the porch is in relation to the "dwelling." *Commonwealth* v. *Fortini*, 44 Mass. App. Ct. 562, 568 (1998) (where victim climbed stairs of front porch of defendant's residence, castle law did not apply because defendant left his second-floor apartment and went to front porch on first floor of house, where he shot victim). "Dwelling" implies an enclosed area. See *Commonwealth* v. *Bennett*, *supra*.

Because we hold that the Moreys were not, at the time of the fight, in the "dwelling" within the meaning of G. L. c. 278, § 8A, it is unnecessary to address the defendant's arguments concerning his "reasonable belief" that Morey and his sons were about to inflict great bodily injury or death. Moreover, the defendant's claims that the judge erred (1) by including the duty to retreat element in the instructions on self-defense and defense of another, and (2) in denying his request for an instruction on defense of property have no merit because they hinge on our acceptance of his contention that the definition of "dwelling" in G. L. c. 278, § 8A, includes the outside stairs and open porch, which we reject. There was no error.

b. *Defense of another instruction.* The defendant argues that the judge's instructions on defense of another were deficient because they did not mention his defense of his child, naming instead only Melanie and Melissa. The defendant's argument concerning the inclusion of the child in the jury instruction is without merit. It is within a trial judge's sound discretion to decide what parts of the evidence may be referenced in a jury instruction. *Commonwealth* v. *Ferguson*, 365 Mass. 1, 10-11 (1974).

c. *Reasonable doubt instruction.* Finally, the defendant contends that the judge's reasonable doubt instruction, which included almost verbatim the reasonable doubt charge as set forth in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), was erroneous. The defendant argues that the two uses of the "moral certainty" phrase within the traditional *Webster* charge are not "linked with language that lends content to the phrase," and thus lessen the Commonwealth's burden of proof. This argument has no merit.

The judge read the *Webster* charge almost verbatim. It is well

settled that where a judge has read the *Webster* charge in a reasonable doubt instruction, there can be no error. See, e.g., *Commonwealth* v. *Watkins*, 433 Mass. 539, 546-547 (2001). See also *Commonwealth* v. *Tavares*, 385 Mass. 140, 146-147, cert. denied, 459 U.S. 1137 (1982) (moral certainty language may be used where judge adheres to traditional *Webster* formulation). This court has consistently held that the traditional *Webster* charge contains sufficient explanatory language to avoid any reasonable likelihood that a jury would misunderstand "moral certainty" to be a standard based on ethics and morality alone, rather than the evidence. See *Commonwealth* v. *Watkins*, *supra* (holding *Webster* charge "has always been, and remains today, the preferred and adequate charge on the Commonwealth's burden of proof").

3. *Conclusion.* For the reasons stated above, we affirm the defendant's convictions.

*So ordered.*