COMMONWEALTH *VS.* ALBERTO VIVES.

Hampden. September 8, 2006. - October 12, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Practice, Criminal,* Instructions to jury, Presumptions and burden of proof, Duplicative convictions, Capital case. *Intent. Robbery. Self-Defense. Homicide. Felony-Murder Rule.*

At the trial of indictments charging armed robbery, the judge's instruction to the jury regarding the defendant's honest and reasonable belief that the property in question belonged to him did not impermissibly shift the burden of proof to the defendant. [540-543]

Evidence at a criminal trial did not warrant a jury instruction on the issue of self-defense [543-544], and the judge's instructions to the jury on provocation were proper [544].

This court vacated as duplicative a conviction of armed robbery underlying a felony-murder conviction. [544]

This court declined to reduce a felony-murder conviction or to order a new trial pursuant to G. L. c. 278, § 33E. [544-545]

INDICTMENTS found and returned in the Superior Court Department on July 2, 2002.

The cases were tried before *Daniel A. Ford,* J.

*Charles K. Stephenson* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

SPINA, J. Alberto Vives was convicted of an armed robbery and an assault and battery by means of a dangerous weapon on Tracy Daniels for an incident occurring on May 28, 2002; an assault and battery by means of a dangerous weapon on Myriam Ramirez, as well as a threat to commit a crime against her on June 1, 2002; and an armed robbery and the felony-murder of Ricardo Torres on June 2, 2002. On appeal he contends that the trial judge's instruction regarding the intent element of the armed robbery charge impermissibly shifted the burden of proof to him because it required him to show that he honestly and

reasonably believed that the property in question belonged to him. The defendant also claims that he was entitled to a self-defense instruction, that the model instruction on provocation improperly placed the burden of persuasion on him, and that the armed robbery conviction that served as the predicate offense for his conviction of felony-murder should be dismissed as duplicative. We dismiss the duplicative conviction but affirm the remaining convictions. Further, we decline to exercise our authority under G. L. c. 278, § 33E, to reduce the degree of guilt or order a new trial.

1. *Background.* The events of this case unfolded over a five-day period in late May and early June, 2002, in the hallways of an apartment building in the city of Holyoke. Testimony at trial showed the defendant, Alberto Vives, to be a drug user who lived with his girl friend in an apartment in Holyoke at that time. In late May, Tracy Daniels visited the defendant's apartment building to call on a woman who sold beauty products from her home. As she descended the stairway to leave the building, Daniels was assaulted by the defendant, who held a kitchen knife to her neck and demanded money from her. Daniels threw down her money and ran away from the defendant, escaping without injury. It was not until several days later, when she learned that someone had been killed in the same building, that Daniels reported this event to the police.

A similar set of incidents occurred in the hallways of the defendant's building on June 1, 2002. While passing through the stairway outside the defendant's apartment on that day, Migdalia Jimenez, a resident of the building, was threatened by the defendant. As she passed by him, the defendant told her that he was going to steal from her and kill her. She noted that he was under the influence of drugs and that he was carrying a knife in his pants. The defendant also told her that he was on drugs, that he was desperate, and that he was going to kill someone.

In the stairwell that same day, the apartment building's superintendent, Myriam Ramirez-Gonzalez, witnessed the defendant holding an unidentified, screaming woman by the neck with a knife in his other hand. The woman was bleeding from a cut on her neck. Following a brief verbal exchange with

the defendant, Ramirez-Gonzalez left the scene, only to return later to confront the defendant about his behavior. After a short argument during which the defendant appeared to be under the influence of drugs, he stabbed Ramirez-Gonzalez. She escaped serious injury because the knife broke. The police were contacted following this incident. Later, the defendant sought out Ramirez-Gonzalez to ask forgiveness for stabbing her and to threaten her, stating, "If you call the police on me again, I'll wind up in jail, but I swear by my mother that I will have you killed."

This string of events culminated the following morning, June 2. Sometime between 7:30 and 8 A.M., the defendant was looking out his apartment window and saw Ricardo Torres entering the building. Torres had come to the apartment building to buy drugs with one hundred dollars in hand. Claiming that Torres owed him money, the defendant went into the stairwell to confront him. After demanding that Torres hand over his money, a scuffle ensued and the defendant stabbed Torres in the chest. In a statement to the police, the defendant admitted to killing the victim: "I just wanted to stick him once. The knife stabbed him somewhere in the front. The knife went in and the guy tried to take the knife out. I held the knife in and I bit him with my teeth on his arm and in his head. . . . I bit him because the guy was trying to take the knife out. I bit him so he would let go of the knife."

After fatally wounding Torres, the defendant took the money, returned to his apartment to change clothes, and fled to a nearby building where his sister lived. According to his statement to police, the defendant disposed of his bloody clothes in a canal on his way to his sister's apartment.[1] The defendant also informed the police that he used some of the one hundred dollars in his possession to purchase crack cocaine. Testimony at trial revealed that the defendant smoked crack cocaine and snorted heroin in the short time before the police arrested him in his sister's apartment.

After his arrest and recitations of the Miranda warnings in both English and Spanish, the defendant gave a statement to the

---

[1]Subsequent efforts by the police to recover these items were unsuccessful.

police that included several contradictory versions of the events of that morning. In the course of giving his statement, the defendant ultimately acknowledged that he had killed Torres in what he claimed was a fight arising from the defendant's demand of repayment.

2. *Honest and reasonable claim instruction.* The defendant's primary argument on appeal is that the judge's instruction to the jury on the subject of armed robbery was deficient. At issue is the section of the charge concerning the defendant's honest and reasonable belief that he was collecting a debt. Addressing the intent element of armed robbery, the judge stated: "There is no intent to steal if the defendant honestly and reasonably believes that the property is his."[2] The defendant argues that this instruction improperly shifted to him the burden to prove that he honestly and reasonably believed that he was collecting on a debt. Because the defendant neither raised this issue before the judge nor objected to the jury instructions on these grounds, we review the charge to determine whether it resulted in a substantial likelihood of a miscarriage of justice. *Commonwealth v. Denis,* 442 Mass. 617, 621 (2004).

There is disagreement between the parties as to the nature of the honest and reasonable claim defense. The defendant, in an effort to show error in the jury charge, characterizes the honest and reasonable belief claim as an affirmative defense, comparing it to provocation and self-defense. In response, the Commonwealth contends that no Massachusetts court has identified honest and reasonable claim as an affirmative defense, and instead compares it to intoxication and mental illness — factors that a jury may weigh in their consideration of the defendant's ability to form specific intent.

We recently had the opportunity to outline the definition of an affirmative defense in a criminal case and, more importantly, the effects of such a label on the parties' respective burdens. *Commonwealth v. Cabral,* 443 Mass. 171, 178-182 (2005). There, we identified the primary characteristic of an affirmative

---

[2]This instruction conforms verbatim with the Superior Court model jury instructions for armed robbery. See 1 Massachusetts Superior Court Criminal Practice Jury Instructions § 2.27.1, at 2-212 n.7 (Mass. Continuing Legal Educ. 1999 & Supp. 2003).

defense as whether it "involves a matter of . . . justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence." *Id.* at 179, quoting Model Penal Code § 1.12(3)(c) (1985).[3] See Model Penal Code and Commentaries § 223.1(3)(b) (1980) ("It is an affirmative defense to prosecution for theft that the actor . . . acted under an honest claim of right to the property or service involved . . ."). In this instance, the existence of the alleged debt of the victim was peculiarly within the knowledge of the defendant, especially in light of the victim's death. For this reason, the defendant's argument that he honestly and reasonably believed that he was collecting a debt was an affirmative defense.

The label of affirmative defense does not relieve the Commonwealth of its burden of proof, however. Because the honest and reasonable claim defense addresses an element of the crime charged, that of the defendant's intent to steal, *Commonwealth v. Gelpi*, 416 Mass. 729, 731 (1994), the burden of proof cannot be shifted to the defendant without running afoul of the mandate of *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975). See *Commonwealth v. Robinson*, 382 Mass. 189, 203 (1981), citing *Patterson* v. *New York*, 432 U.S. 197, 210 (1977). The Commonwealth's burden to disprove the affirmative defense of honest and reasonable claim arises once the defendant has met his own "burden of production." *Commonwealth* v. *Cabral, supra* at 181. Thus, if any view of the evidence would support a factual finding that the defendant was acting as creditor to the victim's debtor, the defendant has met his burden of production and it is incumbent on the Commonwealth to disprove the defense. *Id.* at 181-182, quoting *Commonwealth* v. *Lopes*, 440 Mass. 731, 740 (2004).

It is of little import in this context that there was substantial

---

[3]By outlining a criminal affirmative defense in this manner, we implicitly disagreed with other definitions that exclusively tie the meaning of an affirmative defense to whether it challenges any element of the offense charged. See *Commonwealth* v. *Farley*, 64 Mass. App. Ct. 854, 861 (2005), quoting 21 Am. Jur. 2d Criminal Law § 217 (1998) ("an 'affirmative defense' does not directly challenge any element of the offense"). Indeed, in *Commonwealth* v. *Cabral*, 443 Mass. 171, 179, 181 (2005), we determined that a defendant claiming lawful authority as a surety's agent raises an affirmative defense, despite the fact that the absence of lawful authority was an element of each of the charged crimes.

circumstantial evidence at trial that whatever debt the victim owed the defendant was the result of an illegal drug transaction. Once the defendant has met his burden of production, the jury must be charged with the honest and reasonable belief instruction. *Commonwealth* v. *Gelpi, supra.* If the Commonwealth believes that the subject debt is the result of an illegal transaction, it is incumbent on the prosecution to prove that fact to the jury beyond a reasonable doubt. Such a showing would annul any possibility that the defendant could be relieved from the robbery charge by virtue of his honest and reasonable belief that he was collecting a debt. *Berman* v. *Coakley*, 243 Mass. 348, 350 (1923) ("It is a doctrine so well settled as not to be open to discussion that courts will not aid in the enforcement, nor afford relief against the evil consequences, of an illegal or immoral contract"). In the present case, the Commonwealth made no such argument — the subject of the legitimacy of the debt claimed by the defendant was given only passing mention by either party during trial. The defendant was thus entitled to a jury instruction on the defense of honest and reasonable belief.[4]

Here, the judge instructed the jury on the defense of honest and reasonable belief conformably with the model instruction. Nevertheless, the defendant challenges the adequacy of the jury instruction, arguing that it improperly shifted the burden of proof for his defense. We disagree. The judge's instruction on the honest and reasonable claim defense, read in the context of the entire charge, was adequate.

One part of a jury charge should not be read in isolation; rather, "[t]he test of a charge is the impression which it makes as a whole." *Commonwealth* v. *Quigley*, 391 Mass. 461, 467 (1984), cert. denied, 471 U.S. 1115 (1985), citing *Commonwealth* v.

---

[4]Rule 14 (b) (3) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1518 (2004), requires a defendant intending to rely on a defense based on a claim of authority or ownership to notify the prosecutor of such an intention within the time allowed for pretrial motions or at a later time announced by the judge. A defendant intending to raise his honest and reasonable belief that he was collecting a debt as an affirmative defense to a crime of robbery is required to follow the mandate of rule 14 (b) (3). In this case, the record does not reveal whether such notice occurred. Regardless, the Commonwealth did not object to the instruction as given.

*Benders*, 361 Mass. 704, 707 (1972). In this case, the judge took painstaking care to make plain to the jury that the Commonwealth bore the burden of establishing each element of each crime beyond a reasonable doubt. The judge repeated his description of the Commonwealth's burden during the description of each crime charged, and the armed robbery instruction was no different, stating: "The third element the Commonwealth must prove beyond a reasonable doubt is that the defendant took the money or property with the specific intent to steal it." Overall, the judge's repeated explanation of the Commonwealth's burden rendered his instructions more akin to those that we found appropriate in *Commonwealth* v. *Nunes*, 430 Mass. 1 (1999), than the internally inconsistent charge at issue in *Commonwealth* v. *Acevedo*, 427 Mass. 714 (1998).

3. *Self-defense.* The defendant next raises an argument that his trial counsel expressly declined to raise because it lacked merit — that he was entitled to have the jury charged on the issue of self-defense. Viewed in the light most favorable to the defendant, *Commonwealth* v. *Reed*, 427 Mass. 100, 102-103 (1998), the evidence did not warrant a jury instruction on the issue of self-defense.

The right to self-defense arises only in circumstances where the defendant avails himself of all proper means to avoid physical combat. *Commonwealth* v. *Niemic*, 427 Mass. 718, 722 (1998).[5] Even accepting the defendant's statement to police describing the victim as the one to first brandish a knife, there was still ample opportunity for the defendant to retreat. He was in his own apartment building, coming down the stairs from a higher floor. Instead of retreating, the defendant, by his own admission, chose to "grab[] [the victim's] hand where the knife was and twisted it around. [He] just wanted to stick him once." As there is no view of the evidence that would support a reasonable doubt that the prerequisites of self-defense were present,

---

[5]The defendant's duty to retreat was not altered by the fact that the incident occurred inside his apartment building because the common stairway outside the defendant's apartment was not part of his dwelling within the meaning of G. L. c. 278, § 8A, the so-called "castle law." See *Commonwealth* v. *Albert*, 391 Mass. 853, 862 (1984). Cf. *Commonwealth* v. *McKinnon*, 446 Mass. 263, 267-268 (2006).

the judge committed no error in failing to charge the jury on self-defense.[6]

4. *Provocation.* We reject the defendant's argument that the reasonable provocation instruction inappropriately shifted the "burden of persuasion" to the defendant. The instruction abides closely to our Model Jury Instructions on Homicide 27-30 (1999). In response to a nearly identical argument, we have recently reaffirmed our previous holding that the Model Jury Instructions, and thus those in the defendant's trial, "adequately and repeatedly instructed that the Commonwealth bore the burden of proving beyond a reasonable doubt the absence of mitigating factors." *Commonwealth* v. *Pov Hour*, 446 Mass. 35, 42 (2006).

5. *Armed robbery.* The defendant was convicted of both armed robbery and felony-murder. In an abundance of caution, the trial judge declined to dismiss the armed robbery as duplicative because it was possible that the murder charge could be reversed on appeal. In circumstances where a defendant is convicted of felony-murder, we have held that a concurrent sentence may not be imposed for the predicate felony conviction. *Commonwealth* v. *Scott*, 428 Mass. 362, 369 (1998), and cases cited. Thus, trial judges have the authority, at the time of sentencing, to order a predicate felony dismissed, subject, of course, to affirmance of a defendant's felony-murder conviction. A predicate felony should be dismissed where there were no other theories of murder in the first degree for which he was convicted, *Commonwealth* v. *Souza*, 428 Mass. 478, 494 (1998), and there was only one predicate felony, see *Commonwealth* v. *Doucette*, 430 Mass. 461, 471 (1999). Here, the defendant's armed robbery conviction and the current sentence must be vacated.

6. *Relief under G. L. c. 278, § 33E.* We have reviewed the briefs on appeal and the entire record below, including the transcripts of the hearing on the defendant's motion to suppress

---

[6]Moreover, even if the defendant had raised self-defense, the jury would not have reached that issue, given that the defendant was found guilty of armed robbery. The right to claim self-defense is forfeited by one who commits armed robbery. See *Commonwealth* v. *Griffith*, 404 Mass. 256, 265 (1989), quoting *Commonwealth* v. *Maguire*, 375 Mass. 768, 772-773 (1978).

and his request for new counsel, and we decline to reduce the felony-murder conviction or to order a new trial.

7. *Conclusion.* The conviction of armed robbery (indictment no. 02-539-2) is remanded to the Superior Court where the judgment and sentence on that indictment are to be vacated and the indictment dismissed. As to all remaining convictions, the judgments are affirmed.

*So ordered.*