NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11593

COMMONWEALTH  vs.  CARL B. LIEBENOW, JR.


Berkshire.      September 2, 2014. - November 25, 2014.

Present:  Gants, C.J., Cordy, Botsford, Duffly, & Lenk, JJ.


Larceny.  Intent.  Mistake.  Practice, Criminal, Affirmative
     defense.



Complaint received and sworn to in the Pittsfield Division
of the District Court Department on August 12, 2010.

The case was heard by Fredric D. Rutberg, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Elizabeth Caddick for the defendant.
John Bossé, Assistant District Attorney, for the
Commonwealth.


DUFFLY, J.  The defendant, who was in the business of

collecting and selling scrap metal, was charged with larceny

under $250, G. L. c. 266, § 30 (1), in connection with his

removal of two lengths of steel pipe from a construction site

located on private property in Pittsfield.  He was convicted of

that charge following a jury-waived trial in the District Court. The conviction was affirmed by the Appeals Court in a divided opinion, see Commonwealth v. Liebenow, 84 Mass. App. Ct. 387, 398 (2013), and we granted the defendant's petition for further appellate review.

The defendant claimed as an affirmative defense at trial that he lacked the requisite specific intent to steal because he honestly, albeit mistakenly, believed that the property he removed from the site was abandoned. The judge, however, erroneously viewed the affirmative defense as requiring proof that the defendant's belief was objectively reasonable. This misperception appears to have arisen from the conflation of two distinct concepts that have appeared over time in our jurisprudence: the concept of good faith belief, which is subjective, and the concept of reasonable belief, which is objective.[1] We take this opportunity to resolve the resulting confusion. As the dissent in the Appeals Court correctly stated:

---

[1] In Commonwealth v. Liebenow, 84 Mass. App. Ct. 387, 391-394 (2013), the Appeals Court relied on language in Commonwealth v. White, 5 Mass. App. Ct. 483, 488 (1977), and Commonwealth v. Anslono, 9 Mass. App. Ct. 867, 867-868 (1980), in support of the proposition that, as to the issue of belief, a defendant can be acquitted of larceny only if he honestly and reasonably believed that the money he took was his own. A number of other appellate decisions have cited with approval the reasonable belief language in Commonwealth v. White, supra, and Commonwealth v. Anslono, supra, in discussing the defense of mistaken belief in connection with the specific intent crimes of larceny and robbery. See,

> "[W]ith respect to specific intent crimes such as larceny, . . . [t]he question for the fact finder is not whether the defendant has behaved reasonably but instead whether he actually possessed the requisite mental state.
>
> ". . .
>
> "[W]here a defendant puts at issue his belief that the property he took had been abandoned, . . . the Commonwealth must prove that the defendant 'knew that he had no right to the property taken,' . . . not merely that a reasonable person in the defendant's position would have known" (citation omitted).

Commonwealth v. Liebenow, supra at 405, 409 (Milkey, J., dissenting).

Here, the defendant adequately raised the defense of honest belief that the items he took were abandoned, and it was the Commonwealth's burden to prove beyond a reasonable doubt that the defendant's subjective belief was not honestly held but, instead, was a pretense or sham.  Therefore, the conviction must be vacated and the matter remanded for a new trial.

1.  Background.  We summarize the evidence that the judge, as fact finder, could have found to support the charge of larceny.  We then summarize the evidence introduced by the defendant, in the light most favorable to him, that a fact finder

---

e.g., Commonwealth v. Vives, 447 Mass. 537, 540-541 (2006); Commonwealth v. Gelpi, 416 Mass. 729, 731 (1994); Commonwealth v. Larmey, 14 Mass. App. Ct. 281, 283-285 (1982).  See also Commonwealth v. Garrity, 43 Mass. App. Ct. 349, 358 n.7 (1997), cert. denied, 524 U.S. 954 (1998) (fiduciary embezzlement).

could have found to conclude that the defendant honestly believed that the property was abandoned.

a. Commonwealth's evidence. On the morning of July 27, 2010, the defendant was driving around Pittsfield in his sport utility vehicle (SUV), in search of junk metal that he could sell. He drove onto Amy Court, a privately owned cul-de-sac, which was the site of a proposed twenty-six-unit condominium complex then in the process of being constructed. Several signs stating "no trespassing" and "private property" had been posted, construction had been completed on only one unit, and the construction site contained company trucks, construction equipment, and a "job" trailer. Construction company workers had stacked leftover lengths of steel pipe and steel plates, intended for use on other projects, in an area at the bottom of the cul-de-sac where there was no construction. The items had been placed behind a pile of top soil to keep them from view, so that the area would appear attractive to prospective purchasers of the lots, and there were no trash receptacles or discarded materials in sight.

Kenneth Lufkin, an employee of the developer, observed the defendant drive down to the end of the cul-de-sac; because the tailgate of the defendant's SUV had been removed, Lufkin was able to see that the back of the SUV was empty. The defendant drove

behind the pile of top soil and out of Lufkin's view, but Lufkin could hear what sounded like steel banging.[2] Lufkin stopped the defendant as he was driving from the cul-de-sac toward the public street. When Lufkin asked the defendant what he was doing, the defendant said that he was just picking up some junk steel, and drove away. Lufkin turned around to see what was in the back of the SUV and saw several steel plates and lengths of steel pipe. He wrote down the defendant's license plate number, then contacted his employer and the police.

Officer James Parise of the Pittsfield police department was dispatched to Amy Court, where he spoke with Lufkin and determined that there had been a larceny of some property from that location. The defendant's vehicle subsequently was located at a junkyard that purchased scrap metal. Parise went to the junkyard and spoke with the defendant, who admitted that he had taken the items he had in his vehicle, but said that they had not come from Amy Court. The defendant agreed to accompany Parise to Amy Court; Lufkin and the project developer, Amy Kroboth, met them at the construction site. Lufkin identified the material in the back of the defendant's vehicle as items which had been taken

---

[2] Kenneth Lufkin testified that, in the past, construction workers on the site had encountered people dumping trash on the vacant lots and, as a result, several signs stating "no trespassing" had been placed on trees at the end of the cul-de-sac in order to prevent people from coming onto the property and discarding trash.

from the Amy Court property, and the defendant returned the items. Kroboth thereafter requested that the defendant be charged with larceny.

At the close of the Commonwealth's evidence, the defendant moved for a directed verdict; his motion was denied.

b. <u>Evidence viewed favorably to defendant</u>. The defendant testified that he believed the construction debris and other items he had collected had been abandoned and did not belong to anyone. The defendant knew that people dumped trash at the end of Amy Court. During the mid-morning hours of July 27, the defendant drove his vehicle to the end of the Amy Court cul-de-sac in search of discarded metal items that had been left or dumped on a dirt trail leading into the woods which began at the end of the paved cul-de-sac. This was one of several places to which he drove that morning in search of junk metal.[3] The defendant was unaware of the no trespassing signs, and did not know that Amy Court was then a private road that, according to Kroboth, had not yet "been accepted by the city" as a public street. The defendant made no effort to conceal what he was

---

[3] Officer James Parise of the Pittsfield police department testified that, at the time he encountered the defendant at the junk yard, "[t]here was all kinds of junk in the back of [the defendant's] vehicle; not only stuff that was reported missing from the property, but just scrap metal in general." It is unclear from the record when these items were placed in the defendant's sport utility vehicle (SUV), and whether they were collected before or after the defendant left Amy Court.

doing.  He had driven to that location previously to collect junk metal; and he conducted his search for scrap metal during daylight hours.  The defendant drove from the paved road onto a dirt trail leading into the woods, and saw two lengths of steel pipe, which he picked up and placed in his SUV, along with other items.

The defendant was leaving the area when he encountered Lufkin, who had driven down the road to meet him.  The defendant stopped his vehicle, and Lufkin accused him of dumping.[4]  When the defendant replied that he was "just picking up junk steel," Lufkin said he did not have a problem with that, and the defendant drove off.  Later, when he was met by Parise at the junkyard, the defendant admitted taking the steel pipes, and said he believed they had been abandoned.  He also testified, as he had told Parise, that there were steel plates in his vehicle that did not come from Amy Court.  At Parise's request, the defendant voluntarily returned to Amy Court.  There, he met with Parise, Lufkin, and Kroboth.  The defendant returned the two lengths of

---

[4] Lufkin testified that on at least one prior occasion he had seen the defendant drive down to the end of Amy Court, and noticed that there were tires tied to the top of his SUV.  This caused Lufkin to be concerned that the defendant "was going to try to dump the tires down below."  The defendant also testified that he believed Lufkin was concerned primarily with whether he was dumping items.

steel pipe Lufkin identified as belonging to the developer of Amy Court; he was not asked to return the steel plates.[5]

c. Closing arguments. In closing, defense counsel directed the judge's attention to Commonwealth v. White, 5 Mass. App. Ct. 483 (1977), and argued that the case "stands for the proposition that the defendant is not guilty of larceny if the defendant had a mistaken but honest belief the defendant was entitled to the property."[6] Counsel maintained that, because the defendant "honestly thought he was entitled to have" what he believed was abandoned property, and returned it when it was claimed by the owner, the Commonwealth failed "to prove[] beyond a reasonable doubt that [the defendant] intended to permanently deprive [the owner] of the property."

_____

[5] Lufkin testified that when the defendant and Parise returned to Amy Court, the defendant claimed the flat pieces of steel were from another site; Lufkin acknowledged that the defendant returned the lengths of pipe. Lufkin's employer testified that all of the materials identified by Lufkin as having been taken were returned.

[6] The defendant in Commonwealth v. White, 5 Mass. App. Ct. 483 (1977), was charged with stealing fifty dollars from his employer at gunpoint in a bar. Based on the defendant's testimony, "it was open to the jury to find" that the defendant's employer owed him fifty dollars in wages; seeing the employer in the bar, the defendant demanded his money, and the employer threw it down on the bar counter, whereupon the defendant, believing the money was his, took it and left; he did not point his gun at the employer. Id. at 485. The Appeals Court reversed the defendant's conviction after concluding that the jury had not been not properly instructed. Id. at 488-489.

The prosecutor argued that, even if the defendant's belief were an honest one, that belief also had to be objectively reasonable. He pointed to evidence that the construction materials had been hidden behind a pile of top soil, that signs stating the area was private property had been posted on trees in the vicinity of the dirt pile, and that the defendant had admitted to taking the items from that area as support for the prosecutor's claim that the defendant's belief was not reasonable.

d. <u>Verdict</u>. The judge rejected the defendant's argument. In announcing his verdict, the judge stated that "the presence of the no trespassing sign puts [the defendant] on notice that the property was not for [him] to take. [The defendant's] honest belief at that point would not be relevant."[7]

2. <u>Discussion</u>. The offense of larceny is defined in G. L. c. 266, § 30 (1), as follows:

> "Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . ."

---

[7] Apparently believing that the holding of <u>Commonwealth</u> v. <u>White</u>, <u>supra</u>, was limited to factual circumstances involving the taking of money from a person, similar to the circumstances in that case, the judge also suggested, incorrectly, that a "different intent" applies to larceny offenses that do not involve taking money.

To convict a defendant of larceny requires that the Commonwealth prove that a defendant took the personal property of another without the right to do so, and "with the specific intent to deprive the other of the property permanently."  Commonwealth v. Murray, 401 Mass. 771, 772 (1988).

a.  Honest but mistaken belief.  A defendant has sufficiently raised the defense of mistaken belief "if any view of the evidence" would support a factual finding that the defendant honestly believed that the items he took were abandoned.  Commonwealth v. Vives, 447 Mass. 537, 541 (2006).

Here, in addition to the defendant's testimony that he believed that the property he took had been abandoned, there was evidence at trial, viewed favorably to the defendant, from which a fact finder could have inferred that, notwithstanding the presence of the no trespassing signs, the paved cul-de-sac named Amy Court, as well as the construction site surrounding it, were open to the public to permit inspection of the lots on which townhouses were to be constructed.  The evidence also permitted the inference that the defendant's denials to Parise of having taken anything from "Amy Court" reflected a misunderstanding as to the location the officer meant when he referred to "Amy Court"; there was evidence that the defendant was unaware that the paved cul-de-sac was private property, or that the dirt trail

at the end of that cul-de-sac was part of the Amy Court development then under construction. The left-over lengths of steel pipe taken by the defendant were behind a pile of soil, in an area where no construction was then taking place.

b. <u>Law on offense of larceny</u>. It has been long established that the specific intent to steal is negated by a finding that a defendant held an honest, albeit mistaken, belief that he was entitled to the property he took. See, e.g., <u>Commonwealth</u> v. <u>Brisbois</u>, 281 Mass. 125, 128-129 (1932) (jury correctly instructed that, if defendant "honestly thought" he had legal right to remove wooden building, "then there was no criminal intent to steal"); <u>Commonwealth</u> v. <u>McDuffy</u>, 126 Mass. 467, 469, 471 (1879) (where defendant charged with statutory forerunner of G. L. c. 266, § 30 [1], trial judge erred in excluding evidence "competent upon the issue of the defendant's belief" that money he took was due him); <u>Commonwealth</u> v. <u>Stebbins</u>, 8 Gray 492, 495 (1857) (court noted as "clearly unexceptional" jury instruction "that the defendant was not guilty of larceny, if she took the money under an honest belief that she had a legal right to take it"). See also <u>Commonwealth</u> v. <u>Weld</u>, Thacher's Crim. Cas. 157, 163 (Boston Mun. Ct. 1827) (judge instructed, "if [the defendant] honestly thought he had a right to the paper, it excludes the idea of a felonious taking").

Twenty-five years before Commonwealth v. White was decided, the United States Supreme Court held in Morissette v. United States, 342 U.S. 246, 271 (1952), that an honest, though mistaken, belief that property was abandoned is a defense to larceny.[8]  Noting that stealing government property was a crime of specific intent, the Court held that evidence of a defendant's honest belief should have been presented to the jury, and reversed the defendant's conviction, stating:

> "[I]t is not apparent how [the defendant] could have knowingly or intentionally converted property that he did not know could be converted, as would be the case if it was in fact abandoned or if he truly believed it to be abandoned and unwanted property.
>
> ". . .
>
> "Whether that intent existed, the jury must determine, not only from the act of taking, but from that together with [the] defendant's testimony [that he believed the spent casings to be abandoned] and all of the surrounding circumstances. . . . [On proper instructions, the jury] might have concluded that the heaps of spent casings . . . presented an appearance of unwanted and abandoned junk, and that lack of any conscious deprivation of property . . . was indicated by [the defendant's] good character, the openness of the taking, crushing and transporting of the casings, and the candor with which it was all admitted."

---

[8] The facts in Morissette v. United States, 342 U.S. 246 (1952), are quite similar to those here:  the defendant, who collected and sold junk metal, found several spent bomb casings on an Air Force bombing range that was known to be good hunting grounds and was frequented by hunters.  Id. at 247.  Several signs stating "Danger -- Keep Out -- Bombing Range" were placed on the range.  The defendant loaded the casings into his truck in broad daylight, and testified that he believed the property was abandoned.  Id. at 247-248.

Id. at 271, 276.

c. Source of reasonable belief language. The decision in Commonwealth v. White, supra, appears to have departed from this settled principle when, in summarizing the law, the Appeals Court stated that the jury must acquit a defendant of larceny if they find "that the defendant honestly and reasonably believed that the money he took from [the victim] represented a debt actually due from [the victim] to the defendant" (emphasis supplied).[9] Id. at 488.

_____

[9] Commonwealth v. Low, Thatcher's Crim. Cas. 477 (Boston Mun. Ct. 1837), which is quoted in Commonwealth v. White, supra at 486-487, makes use of the "reasonably believed" language, and may have been one source of confusion. In Commonwealth v. Low, supra at 480, 485, the jury were instructed,

> "The question of [the defendant's] intention is for the jury in all cases, and it is to be inferred from all the circumstances of the case . . . . If the defendant has satisfied you, or you believe from all the evidence in the case, that [the defendant] acted with good faith on his part, that he reasonably believed that he had a good cause of action . . . , and that he might lawfully use this trustee process in this manner, to obtain security for his demand, that will negative the felonious intent, and will authorize you to give a verdict of acquittal."

In that case, the defendant, who was indebted to the victim, gave the victim notes as collateral security for the amount due plus interest. The Commonwealth alleged that, as part of a fraudulent scheme, the defendant obtained a writ of trustee process that was to be served on his codefendant as soon as the codefendant was able to obtain the notes from the victim, who was bringing them in anticipation of payment. The judge further instructed, "A felonious taking supposes not only a trespass, but a fraudulent and wicked mind in the trespasser, acting against his own conviction of right, and the plain dictates of common

The addition of a requirement of a reasonable belief is inconsistent with the White court's reliance on cases such as Commonwealth v. McDuffy, supra, and Commonwealth v. Weld, supra. Indeed, the White court observed that the jury should have been instructed as the defendant had requested,[10] "because it was open to the jury to find on [the defendant's] testimony that he honestly believed that he was taking his own money from [another] and that if the jury had so found, they could not have found the requisite intent to steal and would have been obliged to acquit the defendant of larceny." Commonwealth v. White, supra at 486. Moreover, in framing the question of honest belief, the court noted that the implications of the cases on which it relied "are confirmed by the authoritative writers in the field of criminal law." Id. at 487.

Among those authorities, the White court quoted R.M. Perkins, Criminal Law 271 (2d ed. 1969), for the proposition

honesty," id. at 479, and that the jury could consider whether the defendant had a reasonable belief that he could take out the writ and obtain the notes in the way that he did. If the jury believed that the defendant had a "fraudulent plan" to transfer the notes from the victim's possession to his own, and that the defendant was "aware at the time that he committed a wrongful act, [the jury would] have the right to infer . . . that the defendant had a preconcerted design to get the notes into his possession, with the intent to steal them." Id. at 484.

[10] The defendant had requested an instruction that, "[i]f the defendant believed that the money he had acquired from [the victim] was actually his money, [the] defendant is not guilty of a charge of larceny." Commonwealth v. White, supra at 485.

that, under the then-prevailing view of the law, "no larceny is committed if the taking is open . . . and with a bona-fide belief in the right to collect the debt in that manner." Commonwealth v. White, supra. That treatise also states, "[S]o long as the claim [of mistaken belief] is genuine and sincere there is no larceny, even if it is quite ill-grounded." R.M. Perkins, Criminal Law, supra at 265-266. The court in White also cited R.A. Anderson, Wharton's Criminal Law and Procedure § 456, at 90-91 (1957),[11] and W.R. LaFave & A.W. Scott, Criminal Law § 88, at 638, and § 94, at 693-695 (1972),[12] for the same principle. As they continue to do to date, these authorities explicitly rejected a requirement that such an honest belief also must be objectively reasonable. See W.R. LaFave & A.W. Scott, Criminal Law, supra at § 88, at 638 (where person takes property under mistaken belief he owns it, it was abandoned, or he was given

---

[11] "A defendant does not commit larceny if he takes property of another under the honest belief that it is his property. . . . The defendant is not guilty of larceny if he has acted under a bona fide belief that a person giving him the permission to take the property had authority to do so, or that one whom he assists in the taking has a right thereto" (footnotes omitted). R.A. Anderson, Wharton's Criminal Law & Procedure § 456, at 90-91 (1957).

[12] "One may take the property of another honestly but mistakenly believing (1) that it is his own property, or (2) that it is no one's property, or (3) (though he knows it is another's property) that the owner has given him permission to take it as he did." W.R. LaFave & A.W. Scott, Criminal Law § 88, at 638 (1972). See id. at § 94, at 693-695 (1972).

permission, "he lacks the intent to steal required for larceny, even though his mistaken but honest belief was unreasonable" [footnotes omitted]).[13]

Based on the foregoing, we do not think that the Appeals Court in Commonwealth v. White, supra at 488, intended to depart from the long-established principle that an honest belief need not be objectively reasonable to negate the specific intent required for larceny, despite its use of the phrase "honestly and reasonably believed." The discussion of the cases and authorities in Commonwealth v. White, reflects that court's understanding of "[t]he rather simple rule that an honest mistake of fact or law is a defense when it negates a required mental element of the crime." W.R. LaFave & A.W. Scott, Criminal Law § 47, at 357 (1972). It is of some significance that the White court was not asked to focus specifically on the question whether reasonableness of belief was a concept separate from good faith belief, and reasonableness of the defendant's belief was neither raised nor discussed. As W.R. LaFave & A.W. Scott, Criminal Law,

---

[13] Since 1977, commentators have continued to state that the specific intent required to be found guilty of larceny may be negated where a defendant holds a mistaken but honest belief that the property he is charged with stealing was his to take. See 3 W.R. LaFave, Substantive Criminal Law § 19.5(a), at 88 (2d ed. 2003); R.M. Perkins & R.N. Boyce, Criminal Law 326 (3d ed. 1982). See also Model Penal Code § 223.1(3)(a)-(b) (1980) ("It is an affirmative defense to prosecution for theft that the actor: [a] was unaware that the property or service was that of another; or [b] acted under an honest claim of right . . . .").

supra, also notes, that "simple rule" may be misapplied "because of uncritical acceptance of the general statement that the mistake must be reasonable."

Evidence of reasonableness may, however, be considered by the jury to assist in their determination whether to credit a defendant's honest belief.[14]  "Neither juries nor judges are required to divorce themselves of common sense, but rather should apply to facts which they find proven such reasonable inferences as are justified in the light of their experience as to the natural inclinations of human beings."  United States v. Tejeda, 974 F.2d 210, 213 (1st Cir. 1992), quoting United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991).  See W.R. LaFave & A.W. Scott, Criminal Law, supra at § 88, at 638 ("the openness of the taking, as well as the reasonableness of the belief, though not conclusive, will buttress [a defendant's] claim of good faith"); R.M. Perkins & R.N. Boyce, Criminal Law 326 (3d ed. 1982) ("A mere pretense advanced in bad faith will

---

[14] We note that the current version of Instruction 8.520, Supplemental Instruction 7, of the Criminal Model Jury Instructions for Use in the District Court (2009) includes the same incorrect language on "reasonable belief":

> "Claim of right.  If the defendant took another person's property in an honest and reasonable belief that (he) (she) (another person on whose behalf he [she] was acting) had a legal right to it, then you must find the defendant not guilty, even if that belief was in fact mistaken, because he [she] lacked the intent to steal."

not prevent conviction of larceny . . ."). See also <u>Morissette</u> <u>v. United States</u>, 342 U.S. at 276 (considering evidence of defendant's awareness that "casings were on government property, his failure to seek any permission for their removal and his self-interest as a witness," jury could disbelieve his profession of innocent intent).

    d. <u>Affirmative defense of honest belief</u>. A defendant may raise an honest, yet mistaken, belief as an affirmative defense.[15] See <u>Commonwealth</u> v. <u>Vives</u>, 447 Mass. at 540-541. A defendant's honest belief that the property he took was abandoned constitutes an affirmative defense to larceny. Abandoned property is property "to which the owner 'has relinquished all right, title, claim, and possession, but without vesting it in any other person.'" <u>Griffith</u> v. <u>New England Tel. & Tel. Co.</u>, 414 Mass. 824, 828 (1993), <u>S.C.</u>, 420 Mass. 365 (1995), quoting Black's Law Dictionary 3 (6th ed. 1990). See Black's Law Dictionary, 1411 (10th ed. 2014) (defining "abandoned property" as "[p]roperty that the owner voluntarily surrenders, relinquishes, or disclaims").

---

[15] Although we use the term affirmative defense, in this context the Commonwealth nonetheless bears the burden of proof because the defense addresses an element of the offense of larceny, the defendant's specific intent to steal. Once a defendant meets the burden of production, the burden of proof shifts to the Commonwealth to disprove the defense. <u>Commonwealth</u> v. <u>Vives</u>, 447 Mass. 537, 541 (2006).

3. <u>Conclusion</u>.  The judgment of conviction is vacated and set aside, and the matter is remanded to the District Court for further proceedings consistent with this opinion.

<u>So ordered</u>.