**Lonnie TATE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–85–57.

Court of Criminal Appeals of Oklahoma.

Sept. 13, 1985.

Valdhe F. Pitman, Fred L. Staggs, Eufaula, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Lonnie Tate was convicted by a jury in Haskell County District Court of Larceny of Domestic Animals. The jury recommended a three year suspended sentence, which the trial court imposed.

The information charged appellant with stealing two steers, one red motley faced and one black. The evidence presented at trial was that the two steers belonged to Gregor Weems and Johnny Rosso, whose pasture land was located nearby appellant's pastures. Linda Weems, Gregor's wife, discovered eleven head of cattle missing from their pasture in August of 1982. During the next couple of days the Weems searched for the animals and found two on one neighbor's property, two on another neighbor's property, and several more on the Tate property. She and her husband decided to leave their cattle on the Tate's property and did not notify them or retrieve the steers until the end of November, 1982.

Linda Weems started an investigation which included entering upon the Tate's property, without their permission or knowledge, every two to three days looking for the missing cattle and taking photographs.

On October 23, 1982, appellant took certain cattle to auction and sold them. Among those was a red motley faced steer sold to a buyer named Knapp. Upon discovering some of their cattle was missing from the Tate property, the Weems, working together with an investigator from a cattleman's association, traced the described steer to Knapp. This was after Lonnie Tate advised the Weems he had sold cattle on October 23 at the Poor Boy Auction and also told them they were free to enter his property at any time to look for their cattle.

The investigator and Mr. Weems went to the Knapp's ranch to look for the red motley faced steer because the sales ticket showed he had bought one of those sold by appellant. Mr. Knapp helped them locate the steer in question on his property, but was unable to identify any brand mark, just as they were also unable to do, until the investigator sheered the long haired animal on the branding spot. At that point, Weems' bar seven brand became noticeable.

No evidence was introduced which identified the black steers sold by Tate as any of those missing from the Weems' pasture.

The sole assignment of error raised on appeal is that a conviction for larceny should not be allowed when the owners of the property have acted in a manner that lacks good faith, or which exemplifies unclean hands. In the instant case, there was presented a great deal of evidence that the Weems' cattle had a history of frequently breaking through fences of other people's pastures and grazing their grass and gardens. There was also evidence that the Weems caused their pastures to be overgrazed, and this was the major cause of the problem. Also, the evidence at trial was that when the Weems found some of their cattle had escaped to the Tate property in August, 1982, they neither notified the Tate's nor retrieved the cattle for three months.

The clean hands doctrine is not a recognized defense as such in criminal law. However, the determinative issue is whether the evidence taken as a whole establishes that appellant possessed the requisite intent. The circumstances surrounding this case fails to support a finding that appellant knowingly converted the property. The conviction must, therefore, fail as a result of insufficient evidence to prove the elements of larceny beyond a reasonable doubt.

The State's burden in proving a charge of larceny includes introduction of evidence of defendant's intent to permanently deprive the owner of his or her property. *Barnes v. State*, 387 P.2d 146 (Okl.Cr.1963). When a defendant is shown to be honestly mistaken as to having ownership rights in the property alleged to be stolen, a larceny conviction is not sustainable. *Stanley v. State*, 61 Okl.Cr. 382, 69 P.2d 398 (1938). In *Stanley*, this Court noted that generally courts hold,

> [W]here the taking is open and in the presence of friends, and there is no subsequent attempt to conceal the property, and no denial, and where possession is not obtained by force, trickery, or stratagem, a strict presumption of fact arises that there is no felonious intent which must be repelled by clear and convincing evidence before a jury may legitimately infer a felonious intent.

69 P.2d at 404.

The State's evidence included testimony that the brand mark on the steer in question was not discernible until it was sheered. Appellant testified he had not been frequently tending the cattle during the months in question, being warm months with the grasses growing, and had not noticed Weems' cattle on his property. When preparing the cattle to take to auction, approximately five other people helped to gather the cattle to transport them. The cattle were sold on the open market, and no attempts were made to conceal appellant's actions. Appellant did not act with stealth or in a furtive manner. Though this is not conclusive evidence of innocence, it is a circumstance indicative of a lack of felonious intent. *Cawley v. State*, 96 Okl.Cr. 53, 248 P.2d 273 (1952). One may not mistakenly or negligently commit larceny.

Larceny requires too that the property be taken with the nonconsent of the owner. *Hall v. State*, 312 P.2d 981 (Okl.Cr.1957). The owners' conduct and the circumstances herein do not clearly exclude their consent to the taking.

For the above reasons, we hold the conviction of Larceny of Domestic Animals be REVERSED and REMANDED to the trial court with instructions to DISMISS.

PARKS, P.J., and BRETT, J., concur.