COMMONWEALTH *vs.* CARL B. LIEBENOW, JR.[1]

No. 11-P-2163.

Berkshire. March 27, 2013. - October 17, 2013.

Present: RAPOZA, C.J., CYPHER, BERRY, SIKORA, & MILKEY, JJ.

Further appellate review granted, 466 Mass. 1109 (2013).

*Larceny. Intent. Practice, Criminal,* Affirmative defense, Waiver of trial by jury. *Constitutional Law,* Waiver of constitutional rights. *Mistake.*

At the jury-waived trial of a criminal complaint charging the defendant with larceny under $250 for the theft of steel pipes and metal plates from a construction site, at which the defendant claimed as an affirmative defense that he lacked the requisite specific intent to steal because he honestly believed that the property was abandoned, the judge correctly determined that the defendant's belief, even if considered as honest in the defendant's mind, was not objectively reasonable based on the evidence. [389-397] MILKEY, J., dissenting, with whom SIKORA, J., joined.

The record of a colloquy in a criminal matter, combined with the defendant's signed waiver form, provided ample assurance that the defendant's waiver of his right to a jury trial was voluntary and intelligent. [397-398]

---

[1]The appeal was heard first by a panel comprised of Justices Berry, Sikora, and Milkey, and was then also submitted on the record and briefs to Chief Justice Rapoza and Justice Cypher,

> "all of whom took part in the decision of this case, in accordance with the provisions of Mass.R.A.P. 24(a), 365 Mass. 872 (1974). The procedure follows that delineated in *Sciaba Constr. Corp.* v. *Boston,* 35 Mass. App. Ct. 181, 181 n.2 (1993), and the long-standing practice of the Appeals Court, designed to ensure that published opinions reflect the view of a majority of the Justices. As set forth in *Sciaba, supra,* '[i]n the case of a dissent, if a majority of all the Justices agrees with the majority of the panel, the decision is published as a two to one decision of the original panel. If a majority of all the Justices agrees with the dissent, the panel is enlarged to reflect the view of the majority of the court, generally by adding to the panel the two senior Justices who are part of the full court majority.' The effect is that the opinion that originally circulated to the court as a dissent becomes, with appropriate revisions, the majority opinion. Conversely, the opinion originally circulated as the majority opinion becomes, as appropriately revised, the dissent."

*Commonwealth* v. *Rousseau,* 61 Mass. App. Ct. 144, 144 n.1 (2004).

COMPLAINT received and sworn to in the Pittsfield Division of the District Court Department on August 12, 2010.

The case was heard by *Fredric D. Rutberg*, J.

*Elizabeth Caddick* for the defendant.

*James F. Petersen*, Assistant District Attorney, for the Commonwealth.

BERRY, J. The defendant was convicted of larceny under $250 for the theft of steel pipes and metal plates from a construction site. G. L. c. 266, § 30. At a bench trial, the defendant claimed as an affirmative defense that he lacked the requisite specific intent to steal because he honestly believed that the metal property was abandoned. This defense was unsuccessful. The trial judge determined that the defendant's stated belief that the pieces of metal were abandoned property — notwithstanding that these metal construction materials were being stored on private property posted with no trespassing signs — even if considered as honest in the defendant's subjective mind, was not objectively reasonable based on the case evidence.

A majority of this court, as reflected by the expanded panel, affirms the conviction. We discern no error in the trial judge's determination of guilt. The record reflects that the judge understood the law of the affirmative defense of mistake of fact and abandonment in the context of a larceny charge, and correctly applied that law in finding the defendant guilty on the evidence presented.

The dissent discerns error in the judge's guilty finding only by postulating a new formulation of the affirmative defense of mistake and abandonment. That new formulation is that a defendant's subjectively held honest belief that property is abandoned need not be reasonable and may, indeed, be totally unreasonable. Neither that formulation, nor the dissent's criticism that the judge incorrectly rejected the abandonment defense in making his finding, supports a reversal of the larceny conviction in this case.[2]

1. *Background of the trial and guilty finding.* The following is a brief summary of the trial evidence and entry of the guilty finding.

---

[2]We also address the defendant's ancillary claim that his jury trial waiver was not knowing and voluntary. As discussed in part 3, *infra*, this claim is not availing.

The construction site from which the defendant took the pieces of metal was private property located in Pittsfield. The property was known as Amy Court. There was active, ongoing construction on a townhouse development, with large construction machines, a work trailer, the raising of a building, and the clearing of land. There were several "no trespassing . . . private property" signs posted throughout the site. The defendant drove his pickup truck onto Amy Court during midmorning. The defendant then took several lengths of steel pipe and metal plates and loaded them into the back of his pickup truck. An employee at the site inquired what the defendant was doing. The defendant replied that he was just picking up some junk steel. The defendant drove away from the Amy Court construction site. The police were notified. Shortly thereafter, a police officer stopped the defendant. The bed of the defendant's pickup truck still contained numerous pieces of pipe, plates, and other metal. When inquired of by the police officer where he had gotten the metal, the defendant first denied that any of the metal came from the Amy Court construction site.

The defendant later changed this story and admitted that the metal property was taken from the construction site. However, the defendant testified that he honestly believed the metal was abandoned. In finding the defendant guilty, the trial judge stated, "As far as I'm concerned, the presence of the no trespassing sign puts you on notice that the property was not for you to take. Your honest belief at that point would not be relevant. So I find you guilty, sir."

The dissent sees this statement as error of law. We think not. "When a case is tried without a jury, the legal framework in which facts are to be found is not generally stated with the precision and amplitude of instructions to a jury [and] it is presumed that the judge as trier of fact applies correct legal principles." *Commonwealth* v. *Kerns*, 449 Mass. 641, 655 (2007), quoting from *Commonwealth* v. *Milo M.*, 433 Mass. 149, 152 (2001). The dissent far too finely parses and interprets the judge's remark in such a way that would compel a reversal that is entirely unwarranted by the trial evidence. As the trial transcript reveals, the judge referenced the no trespassing signs as "put-[ting] [the defendant] on notice" that the scrap metal was not

abandoned. Add to this that the defendant lied when first confronted by the police, denying that he had taken the metal pieces from within the Amy Court construction site. These two incriminating pieces of evidence, when added to the totality of the other evidence at trial, support the judge's rejection of the affirmative defense of mistake of fact with regard to property abandonment.

Contrary to what the dissent writes, the judge's few words in brief comment concerning the posted no trespassing signs — which comment was tied to evidence that logically tended to demonstrate that the metal property behind the posted no trespassing signs was not abandoned and could not objectively be believed to be so — does not give rise to reversible error. Indeed, because the evidence in the light most favorable to the Commonwealth supported the guilty finding on the existing law of larceny and the affirmative defense of mistake on property ownership or property abandonment, this case could be affirmed without further address.[3] However, the dissent would go much further in address and seeks to revamp the existing black-letter law governing this affirmative defense.[4] We turn now to this issue concerning the state of the existing law.

2. *Mistake of fact with regard to abandonment.* As recast under the dissent's construction, a defendant's mistaken belief regarding property ownership or abandonment would compel a trial judge to instruct that the jury must acquit (or a judge sitting as fact finder must acquit), even if a defendant's subjectively expressed honest belief that property is abandoned is, objectively,

---

[3]The question of property ownership and claim of right to property encompasses both straight legal ownership questions and abandonment. However, because this is an abandonment case, to shorten phrases, the single term "abandonment" will be predominantly used herein. However, the issue presented in the majority and dissent in this case encompasses claims of both right to property and abandonment; so, from time to time, the longer double terms will also be used herein.

[4]Statements in the dissent suggesting that Massachusetts case law is not clear are without foundation. See, in particular, *Commonwealth* v. *Anslono*, 9 Mass. App. Ct. 867, 867-868 (1980). See also *Commonwealth* v. *Vives*, 447 Mass. 537, 540-541 (2006); *Commonwealth* v. *Larmey*, 14 Mass. App. Ct. 281, 283-285 (1982); and *Commonwealth* v. *White*, 5 Mass. App. Ct. 483, 486-488 (1977). All of these cases address this affirmative defense of mistake of ownership and claim of right to property and the element of specific intent. The cases are further described in more detail in part 2 of this opinion, *infra.*

totally unreasonable. Such acquittals under the dissent's theory would be compelled so long as a defendant claims — even without any reasonable basis to so believe — that the property had no owner or was abandoned. No Massachusetts case supports this newly defined affirmative defense wrought by the dissent. Indeed, the dissent's recast is not only out of sync with existing case law but also contrary to the model jury instructions, discussed *infra*, which define the elements of, and affirmative defenses to, the crime of larceny.

Finally, and of import, the dissent's recast of the affirmative defense of mistake concerning abandonment of property will lead to instructing a jury (and defining the law to be applied by a judge as fact finder) that the jury (or judge) *must* enter a not guilty verdict (or finding) — even if such an acquittal is contrary to the trial evidence, and even if the acquittal is virtually nonsensical because the defendant's belief that the subject property was abandoned is entirely irrational and unreasonable, if viewed objectively. We address each of the above-mentioned concerns in turn.

a. *The case law on this affirmative defense to larceny.* As previously observed, the dissent overlooks extant, well-established Massachusetts case law. Hence, we now turn to a number of Massachusetts cases stating that, where a defendant claims as an affirmative defense a mistake of fact concerning the ownership of property or abandonment, such mistaken belief must be both honestly held and reasonable under the circumstances.

In *Commonwealth* v. *Anslono*, 9 Mass. App. Ct. 867 (1980), the court made clear that, if an affirmative defense is raised premised on a defendant's mistaken belief concerning ownership interest in property subject to a motor vehicle larceny prosecution (which, of course, encompasses an affirmative defense structured on a lack of any ownership by abandonment), *the defendant is entitled to an instruction directed to whether the defendant had both an honest and reasonable belief* concerning the property ownership issue. In *Anslono*, we wrote as follows on the issue:

> "On the evidence, the judge was required to instruct the jury clearly and correctly, in a fair and impartial manner,

on the substantive elements of the crime charged, with particular attention to the crucial question of the existence of a larcenous intent. *Commonwealth* v. *Porter,* 10 Met. 263, 283 (1846). *Commonwealth* v. *Carson,* 349 Mass. 430, 435 (1965). *Commonwealth* v. *Kelley,* 359 Mass. 77, 92 (1971). *Commonwealth* v. *Corcione,* 364 Mass. 611, 618 (1974). . . .

> "His instructions on the question of larcenous intent . . . omitted entirely an instruction that the defendant was entitled to an acquittal *if he honestly and reasonably believed* that he had title to, and the right to sell, the motor vehicle. *Commonwealth* v. *Stebbins,* 8 Gray 492, 495 (1857). *Commonwealth* v. *White,* 5 Mass. App. Ct. 483, 485-488 (1977)." (Emphasis added.)

*Anslono,* 9 Mass. App. Ct. at 867-868. Thus, the dual requirement of an honest *and* reasonable predicate for the affirmative defense of mistaken ownership or abandonment in a larceny prosecution is patent in *Anslono.*[5] Cf. *Commonwealth* v. *Titus,* 116 Mass. 42, 44-45 (1874) ("[I]f, at the time of first taking [lost goods] into his possession, [the defendant] has a felonious intent to appropriate them to his own use and to deprive the owner of them, and then knows or has the reasonable means of knowing or ascertaining . . . who the owner is, he may be found guilty of larceny").

Also imposing this dual requirement of subjective honesty and objective reasonableness is *Commonwealth* v. *Vives,* 447 Mass. 537 (2006). In a section entitled *"Honest and reasonable claim instruction,"* which concerns this affirmative defense, the Supreme Judicial Court repeatedly echoes the dual requirements:

> "We recently had the opportunity to outline the definition of an affirmative defense in a criminal case and, more

---

[5]Cf. *Commonwealth* v. *Sherry,* 386 Mass. 682, 697 (1992), which states as follows: "The defense of mistake of fact, however, requires that the accused act in good faith and with reasonableness. See *Commonwealth* v. *Presby,* 14 Gray 65, 69 (1860); *Commonwealth* v. *Power,* 7 Met. 596, 602 (1844); R. Perkins, Criminal Law 939-940 (2d ed. 1969)." While the *Sherry* case is discussing mistake of fact in a rape prosecution, not a larceny prosecution, the direct dual requirements of mistake of fact have equal application in both offense proof questions.

importantly, the effects of such a label on the parties' respective burdens. *Commonwealth* v. *Cabral*, 443 Mass. 171, 178-182 (2005). . . . See Model Penal Code and Commentaries § 223.1(3)(b) (1980) ('It is an affirmative defense to prosecution for theft that the actor . . . acted under an honest claim of right to the property or service involved . . .'). . . . [Here], the defendant's argument that *he honestly and reasonably believed* that he was collecting a debt was an affirmative defense.

"The label of affirmative defense does not relieve the Commonwealth of its burden of proof, however. Because *the honest and reasonable claim defense addresses an element of the crime charged, that of the defendant's intent to steal,* . . . the burden of proof cannot be shifted to the defendant . . . . The Commonwealth's burden to disprove *the affirmative defense of honest and reasonable claim* arises once the defendant has met his own 'burden of production.' . . . Thus, if any view of the evidence would support a factual finding that the defendant was acting as creditor to the victim's debtor, the defendant has met his burden of production and it is incumbent on the Commonwealth to disprove the defense." (Emphases added.)

*Vives*, 447 Mass. at 540-541.[6] So it is, as *Vives* pinpoints, that this affirmative defense requires a duality of (subjective) honest belief and (objective) reasonableness concerning the ownership or abandonment of property — all as tied to specific intent and to proof of the crime of larceny.

*Commonwealth* v. *Larmey*, 14 Mass. App. Ct. 281, 283-285 (1982), follows the same black-letter law pattern of requiring this legal duality for the larceny affirmative defense. In that case, the court held that the evidence supported a defense jury instruction

---

[6]The dissent discusses that larceny is a specific intent crime. Of course, specific intent is required to prove larceny. "To support a conviction of larceny under G. L. c. 266, § 30, the Commonwealth is required to prove the 'unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently.' " *Commonwealth* v. *Mills*, 436 Mass. 387, 394 (2002), quoting from *Commonwealth* v. *Donovan*, 395 Mass. 20, 25-26 (1985). But that does not change the legal principles concerning the reasonableness element of the abandonment affirmative defense as the above cases establish. See, in particular, *Anslono* and *Vives*, which directly address the specific intent issue.

concerning both an "honest *and* reasonable belief" (emphasis added). *Id.* at 283, 285. Indeed, in *Larmey*, Justice Smith noted that on the trial record in that case, the larceny instruction requested by the defense was not "directly on point" in that it failed to include both the honest and reasonable belief requirements.

> "*As framed by the defendant, the requested instruction was not directly on point as it did not assume an honest and reasonable belief on behalf of the defendant,*[7] but it was 'close enough' (see *Commonwealth* v. *White*, 5 Mass. App. Ct. [483,] 488 [(1977)]) to require the judge to give the substance of an instruction that the defendant should be acquitted on so much of the indictments as charged him with robbery and stealing (larceny) *if the jury should find that the defendant honestly and reasonably believed that the money he took* from the victims had been stolen by them from the two women and that he intended to return it to them. There was sufficient evidence to warrant the submission of the defendant's theory to the jury, especially in view of the testimony of one of the victims in regard to the remarks of the defendant at the time of the incident." (Footnotes omitted.)

*Larmey*, 14 Mass. App. Ct. at 285.

The case of *Commonwealth* v. *White*, 5 Mass. App. Ct. at 486-488, is in accord with *Anslono*, *Vives*, and *Larmey*. So, it is noted in *Larmey* that "[t]he requested instruction in [*White*] suffered from the same defect" as was present in *Larmey*, in that the instructions did not explicitly state the requirement of an honest *and* reasonable belief on the part of the defendant. *Larmey*, 14 Mass. App. Ct. at 285 n.6. Consistent with what the *Larmey* case states, in *White* the court held that "the defendant was entitled to an instruction to the effect that he should be acquitted on so much of the present indictment as charges him with robbery and stealing (larceny) if the jury should find that the defendant honestly and reasonably believed that the money he

---

[7]The requested instruction was this: "If you find . . . that the money was taken from the two persons with intent to return[] it to the two women . . . claimed to be robbed, then you must find the defendants not guilty." *Larmey*, 14 Mass. App. Ct. at 283. Thus, the sought instruction included the subjective component but omitted the objective component of the defense.

took from [the victim] represented a debt actually due from [the victim] to the defendant." *White*, 5 Mass. App. Ct. at 488.

b. *The existing larceny model jury instructions.* Contrary to the dissent's recast, Instruction 8.520 of the Criminal Model Jury Instructions for Use in the District Court (2009) (Model Jury Instruction 8.520) correctly indicates that a defendant's mistaken belief that property is abandoned is a valid affirmative defense to a charge of larceny, *only if the defendant's mistaken belief was both honestly held, from a subjective view, and objectively reasonable.* Model Jury Instruction 8.520 tracks the above-discussed, long-standing case law in this State, which requires both an honest belief *and* a reasonable basis for that belief as predicates for this affirmative defense to larceny.

Model Jury Instruction 8.520, which defines the elements of "Larceny by Stealing" and which, as material to this case, defines in Supplemental Instruction 7 the affirmative defense of mistake concerning property ownership (see note 8, *infra*), follows the precedential path of *Anslono, Vives, Larmey,* and *White* to the end of requiring not only an honestly held, but also a reasonable, mistaken belief involving ownership (or abandonment) of the subject property. See *Commonwealth* v. *Gelpi*, 416 Mass. 729, 731 (1994) ("The defendant argues that, based on the evidence tending to prove that he had no intent to steal because he had an honest and reasonable belief that the property was his, the jury should have been so instructed. . . . The defendant was entitled to have the jury consider this evidence").

What the dissent would do is split asunder the honestly held and reasonable belief elements in the case law and in the larceny model jury instruction. To do so would mean that a defendant's honest subjective belief no longer has any mooring to objective reasonableness. To measure how untenable the dissent's construction actually is, one might consider how a jury instruction would read in light of the new defense crafted by the dissent, as opposed to the present, and correct, instruction contained in Model Jury Instruction 8.520.

Under the current Model Jury Instruction 8.520, a proper instruction on mistake of fact regarding ownership and abandonment of property would read as follows:

"If the defendant took another person's property *in an*

*honest and reasonable* belief that [the defendant] had a legal right to it [including by abandonment] then you must find the defendant not guilty, even if that belief was in fact mistaken, because [the defendant] lacked the intent to steal."[8]

In contrast to this established approach, the dissent's recast would, in effect, yield an instruction (and require a judge to apply the law) in something like the following mode:

"If the defendant took another person's property in an honest but mistaken belief that the property was abandoned — even if that belief *was objectively unreasonable* — then you the jury (or, you the fact-finding judge) must find the defendant not guilty, because the defendant lacked the intent to steal."[9]

---

[8]As currently printed, the portion of Model Jury Instruction 8.520 relating to mistake concerning property ownership reads as follows:

"*Claim of right.* If the defendant took another person's property in an honest and reasonable belief that (he) (she) (another person on whose behalf he [she] was acting) had a legal right to it, then you must find the defendant not guilty, even if that belief was in fact mistaken, because he (she) lacked the intent to steal."

Criminal Model Jury Instructions for Use in the District Court, Instruction 8.520, Supplemental Instruction 7 (2009).

[9]Furthermore, bypassing clear Massachusetts law, the dissent turns to a survey of out-of-State law, relying on other States to answer a question our Supreme Judicial Court, as well as this court, has already addressed. See *post* at 406-409 & nn.14-16. There are other inherent problems with this out-of-Massachusetts law survey in the dissent, in that certain States, with cases relied upon by the dissent, have quite different mistake-of-fact statutes. For example, *State* v. *Sexton*, 160 N.J. 93 (1999), does not stand for the proposition that an unreasonable mistake of fact is exculpatory. Indeed, New Jersey's "defense of mistake" statute requires that the defendant "reasonably arrived at the conclusion underlying the mistake." *Id.* at 103. The court concluded that an alleged mistake of fact as to whether a gun was loaded could be a defense to reckless manslaughter, and that the jury should be instructed to determine whether the defendant's mistaken belief was recklessly formed. *Id.* at 106. See *State* v. *Abbey*, 13 Ariz. App. 55, 57 (1970) (concluding that the State did not disprove the defendant's contractual claim-of-right defense, with no discussion of reasonableness).

Further complicating the dissent's reliance on out-of-Massachusetts law is that the text of other State larceny statutes differ markedly from our larceny statute, G. L. c. 266, § 30. For example, in *State* v. *Cavness*, 80 Haw. 460,

As is clear from the plain text of the latter theoretical jury instruction, the construction urged by the dissent has the prospect of yielding absurd verdicts of acquittal.

3. *Jury trial waiver.* The defendant elected a jury-waived trial, prior to which the trial judge conducted an oral colloquy in open court. The defendant now claims, for the first time on appeal, that this colloquy was inadequate to assess whether his jury waiver was knowing and voluntary. "Because he failed to make a timely objection, we review for a substantial risk of a miscarriage of justice." *Commonwealth* v. *Pimentel*, 73 Mass. App. Ct. 777, 787 (2009). We see no such risk.

It has long been held that there is no " 'rigid pattern' of factual determinations which a judge must make before concluding a defendant's waiver of the right to trial by jury was voluntary and intelligent." *Commonwealth* v. *Schofield*, 391 Mass. 772, 775 (1984), quoting from *Ciummei* v. *Commonwealth*, 378 Mass. 504, 509-510 (1979). Although this court does not have before it a transcript of the contested colloquy, the defendant concedes in his brief that the judge explained the defendant's right to a jury trial; thoroughly addressed the difference between a jury trial and bench trial; acknowledged the defendant's signed jury waiver form; and confirmed that defense counsel discussed the significance of the jury waiver with the defendant.

We further note that the printed jury waiver form, which is present in the record appendix, clearly states that the defendant had been informed of the following: (1) a jury consists of members of the community; (2) the defendant may participate in the jury's selection; (3) the jury's verdict must be unanimous;

---

463 (Ct. App. 1996), the court analyzed Hawaii's trespass statute in light of another Hawaii statute, which mandates that the State must prove a minimum of recklessness when no mental state is specified in a statute (such as in the trespass statute). Accordingly, the court remanded for a new trial that would include the determination whether the defendant's belief in his right to be on the premises was reckless, stating that "an unreasonable belief may or may not be a reckless belief." *Id.* at 466. Under the pertinent State statutes, reasonableness was not the relevant inquiry, and an unreasonable belief, if arrived at recklessly, would not excuse the defendant's conduct. See *People* v. *Zona*, 14 N.Y.3d 488, 492-493 (2010) (citing New York's statute on larceny defenses, Penal Law § 155.15[1], which states that "it is an affirmative defense that the property was appropriated under a claim of right made in good faith," and reasoning that the statute does not require reasonableness).

(4) the respective roles of the judge and jury in a jury trial; and (5) how the role of the judge changes in a jury-waived trial. Again, this jury waiver form was signed by the defendant. It was likewise signed by the trial judge and defense counsel. Given all of the foregoing indications, we are satisfied that the defendant was adequately apprised of the significance of his jury waiver.

In any event, " '[t]he defendant, being competent, must simply have indicated a comprehension of the nature of the choice' between a bench and jury trial. [*Ciummei, supra* at 510.] Such comprehension of the choice may be based on information provided to the defendant by the judge, the defendant's counsel, the defendant's personal knowledge, or some other source." *Schofield*, 391 Mass. at 776. Here, the judge's colloquy, combined with the signed waiver form, provides ample assurance that the defendant's waiver was voluntary and intelligent.

*Judgment affirmed.*

MILKEY, J. (dissenting in part, with whom Sikora, J., joins). The defendant testified that he honestly believed that the items of scrap metal he took had been abandoned. On the law, he maintained that such a belief was sufficient to negate the specific intent necessary to prove larceny, regardless of whether his belief was objectively reasonable. The Commonwealth countered that even if the defendant honestly believed the property had been abandoned, that belief also had to be reasonable. The principal question raised by this appeal is which view of the law is correct. I agree with the defendant that an honestly held belief that property had been abandoned would be sufficient to negate the specific intent that is an essential element of the crime of larceny. Because the explanation that the judge offered for his guilty finding appears to rest on a contrary view of the law, the conviction should be vacated. I therefore respectfully dissent.[1]

---

[1]At the same time, I disagree with the defendant's contention that the judge specifically found that the defendant honestly held his professed belief. Instead, as discussed *infra*, the judge saw no need to resolve that question. Moreover, the evidence, when viewed in the light most favorable to the Commonwealth,

*Background.* Although this appeal ultimately turns on a pure question of law, the trial evidence lends useful context to the parties' respective legal positions. I therefore begin by briefly recounting the evidence.[2]

The defendant makes his living by collecting and selling scrap metal. Thus, he regularly looks for abandoned metal items, e.g., by combing through what people leave by the curb on trash day. The defendant acknowledged that when he searches for "stuff being dumped" — which he claimed is "so common in Pittsfield" — he does not look for signs indicating private property.

The property at issue in this appeal consists of various metal items that the defendant took from land off of Amy Court in Pittsfield. Amy Court is a cul-de-sac that recently had been built to provide access to a thirteen-building, twenty-six-unit townhouse development. At the time of the incident, only one of the buildings had been constructed. The evidence at trial paints a picture of a typical residential construction site: a mixture of cleared land and woods, a "job trailer," dirt piles, heavy equipment, and the like. Amy Court had not yet been accepted by the city, and therefore was a private way. Several no trespassing signs had been placed on trees at the site, including one near the

was plainly sufficient to support a conviction of larceny. Therefore, the Commonwealth would be entitled to seek a retrial even if the conviction were vacated.

I concur in part 3 of the court's opinion (concerning the adequacy of the defendant's jury trial waiver).

[2]The statements that follow present a neutral recounting of the trial evidence. I note, however, that in considering whether the defendant fairly raised his defense that he honestly believed he had a right to take the property, the defendant is entitled to have the evidence viewed in a light most favorable to him. Compare *Commonwealth* v. *Kingston*, 46 Mass. App. Ct. 444, 449-450 (1999). Cf. *Commonwealth* v. *Pike*, 428 Mass. 393, 395 (1998) (in determining whether defendant is entitled to instruction on self-defense, "all reasonable inferences should be resolved in favor of the defendant, and, no matter how incredible his testimony, that testimony must be treated as true"). For its part, the majority improperly views the trial evidence in a light favorable to the Commonwealth. For example, the majority, *ante* at 389-390, rejects the defendant's explanation for why his trial testimony was in fact fully consistent with earlier statements he had made to police (see note 3, *infra*), and concludes that the defendant "changed [his] story" after he "lied when first confronted by the police" (even though the trial judge made no findings on such issues). This amounts to appellate fact finding.

specific area in question. At the same time, the developer had also placed a sign at the site that advertised the development, and "the public was allowed to come in and see these sites and make a bid on them or check them out or anything else like that." It is uncontested that the developer had "had a lot of trouble with people dumping garbage and so forth" at the site.

As the defendant admits, on the morning of July 27, 2010, he drove his truck down Amy Court seeking scrap metal. He does not contest that there were no trespassing signs posted in the area, but he testified that he did not see them. Using a path off of Amy Court, the defendant accessed an area lying between the woods and one of the dirt piles at the site. According to his testimony, he thought that this area was owned by the city. There he found various metal items, including what the developer's employee described as "miscellaneous leftover pipes from doing the sewer lines and water lines." The defendant testified that he was aware that others had been using the site as a dumping ground and that he believed that the items he took had been abandoned. He placed the items into his truck so that he could sell them as scrap metal.

Kevin Lufkin, an employee of the developer, spotted the defendant's truck when it entered the site. His initial concern was that the defendant might have come to dump refuse there. Lufkin confronted the defendant as he was leaving. According to Lufkin, the defendant told him that he was "just picking up some junk steel" and drove away. The defendant testified to a somewhat more extended version of the conversation. According to him, after he informed Lufkin what he was doing there, Lufkin told him, "Okay, I don't have no problem with that. Just don't dump . . . ."

After Lufkin checked with his boss to make sure she had not given the defendant permission, he reported the incident (along with the defendant's license plate number) to police. The police located the defendant as he was in the process of selling a truck-load of scrap metal. The testifying officer described the load as "all kinds of junk." The defendant denied that any of the material was stolen, admitted to taking some of the material from the development site,[3] and stated his belief that that material had

---

[3] The police witness testified that the defendant initially "admitted to taking

been abandoned. The defendant then drove the truck back to the site with the police, and had further discussions with Lufkin there. Although the defendant continued to protest that he had not done anything wrong, he returned the material. The developer nevertheless pressed charges and a criminal complaint issued. Sitting jury-waived, the trial judge found the defendant guilty, and, as discussed *infra*, he explained his reasoning in brief detail.

*Discussion.* I begin by examining the explanation that the trial judge himself offered for his guilty finding.[4] That explanation followed closely on the heels of the closing arguments in which the parties debated whether the defendant's professed belief had to be objectively reasonable (in addition to being honestly held). In finding the defendant guilty, the trial judge indicated that he was relying on the presence of a no trespassing sign as having put the defendant "on notice" that the property was not his for the taking. He further stated that the defendant's "honest belief at that point would not be relevant." By these statements, the judge expressly acknowledged the possibility that the defendant honestly believed that the property had been abandoned, while finding no need to decide that factual question (it being, in the judge's view, irrelevant in light of the no trespassing sign). Accordingly, when his explanation is viewed in context, it is plain that the judge accepted the Commonwealth's view that an honest belief in the right to take property has to be objectively reasonable in order to justify an acquittal, and that he concluded that a reasonable person would have known that the property had not been abandoned based on the posting of a no trespassing sign in the area.[5] The judge's guilty finding is thus

the property, but he was adamant that it was from another location." The defendant did not dispute that he made such statements, but he claims that his denials were specific to certain steel plates found in his truck, and that the officer's testimony is not to the contrary. The defendant has consistently maintained that the steel plates were taken from a different location. Lufkin testified that the plates were from the site.

[4]The presumption that a judge sitting without a jury has correctly instructed himself on the law applies only "absent contrary indication." *Commonwealth v. Kerns*, 449 Mass. 641, 650 n.13 (2007). In any event, I agree with the majority that the judge accepted the Commonwealth's view of the law; the question is whether that view is correct.

[5]The majority itself recognizes that the judge accepted the Commonwealth's view of the law and that he "determined that the defendant's stated belief[,]

bound up in the view of the law urged by the Commonwealth.[6] For the reasons that follow, I believe that view is incorrect.

"A fundamental tenet of criminal law is that culpability requires a showing that the prohibited conduct (actus reus) was committed with the concomitant mental state (mens rea) prescribed for the offense." *Commonwealth* v. *Lopez*, 433 Mass. 722, 725 (2001), citing *Morissette* v. *United States*, 342 U.S. 246, 250 (1952). "The mistake of fact 'defense' is available where the mistake negates the existence of a mental state essential to a material element of the offense." *Commonwealth* v. *Lopez*, *supra.* Application of this principle, in theory, is straightforward: "One merely identifies the mental state or states required for the crime, and then inquires whether that mental state can exist in light of the defendant's ignorance or mistake of fact . . . ." LaFave, Substantive Criminal Law § 5.6(b), at 397 (2d ed. 2003).

"Larceny is the taking without right of the personal property of another with the *specific intent* to deprive the other of the property permanently" (emphasis added). *Commonwealth* v. *Murray*, 401 Mass. 771, 772 (1988). The "mental state . . . required for the crime" of larceny is thus a specific intent to steal; and to sustain a conviction, the Commonwealth must prove that the defendant "consciously intended certain consequences, in this case [permanent deprivation of the property from its rightful owner], to result from his actions." *Commonwealth* v. *Gunter*, 427 Mass. 259, 269 (1998).[7]

The case law has long recognized that a defendant cannot be guilty of larceny if she "took the [property] under an honest

---

. . . even if considered as honest in the defendant's subjective mind, was not objectively reasonable based on the case evidence." *Ante* at 388.

[6]The Commonwealth maintains that the judge was trying to say that he did not believe the defendant. Had the judge simply concluded that the defendant was lying, he could have expressed that conclusion in far more straightforward terms than the explanation he offered. Instead, he explicitly found that any "honest belief" on the defendant's part that the property was abandoned "would not be relevant." See *Commonwealth* v. *Colon*, 33 Mass. App. Ct. 304, 308 (1992) (judge sitting without jury may "make an express ruling on a disputed point of law," preserving issue for appeal).

[7]In offering his comments at the end of the trial, the judge suggested that "a different intent" applied to larceny cases, such as the one before him, that did not involve "taking money from a person." As the Commonwealth concedes, there is no merit to this distinction.

belief that she had a legal right to it." *Commonwealth* v. *Steb-bins*, 8 Gray 492, 495 (1857). See *Commonwealth* v. *Hurd*, 123 Mass. 438, 439 (1877) (defendant would not be guilty if he "honestly believed he had the right to take and sell the property"). In short, it is axiomatic that one cannot "consciously intend" to steal property that one honestly believes he or she has the legal right to take.

An individual who appropriates abandoned property has not committed larceny, because abandoned property by definition has no owner. See *Griffith* v. *New England Tel. & Tel. Co.*, 414 Mass. 824, 828 (1993). A belief that property is abandoned is thus a belief in a legal right to take that property. See Torcia, Wharton's Criminal Law § 78, at 560-561 (15th ed. 1993) ("[A] defendant is not guilty of larceny for taking the property of another if he mistakenly believed that the property was his own or was abandoned" [footnote omitted]). See also *Moris-sette* v. *United States, supra* at 276. Although the Commonwealth need not prove the precise identity of the rightful owner, a larceny conviction thus requires "a showing that a possessory or other property interest in the thing stolen is in someone other than the thief and proof that the thief knew that he had no right to the property taken." *Commonwealth* v. *Souza*, 397 Mass. 236, 238 (1986), quoting from *Commonwealth* v. *Kiernan*, 348 Mass. 29, 50 (1964), cert. denied sub nom. *Gordon* v. *Mas-sachusetts*, 380 U.S. 913 (1965). It follows from these long-established principles that were a fact finder to conclude that a defendant honestly believed that the property he took had been abandoned, that fact finder could not simultaneously conclude that the defendant specifically intended to steal the property. The test is one of subjective intention, not objective reason-ableness.[8]

Nevertheless, as the majority accurately observes, the Com-

---

[8]See *Commonwealth* v. *Blow*, 370 Mass. 401, 407 (1976) (specific intent is "purpose or objective of the defendant at the time the crime was committed"). Compare *Commonwealth* v. *Judge*, 420 Mass. 433, 441 (1995) (in prosecution for murder in first degree, under theory of deliberate premeditation, third prong of malice, which "permits an inference of intent under an objective [a reasonably prudent person] standard . . . , does not satisfy the requirement of specific intent").

monwealth's position that a defendant's belief must be objectively reasonable (in addition to being honestly held) finds some support in the case law. Specifically, there are cases that speak in terms of a defendant's "honest and reasonable belief." See, e.g., *Commonwealth* v. *White*, 5 Mass. App. Ct. 483, 486-488 (1977). *Commonwealth* v. *White* appears to be the first Massachusetts appellate decision that referenced the "honest and reasonable" formulation in the context of a defense to larceny. That case, however, did not present the question whether an honest but objectively unreasonable belief that one is entitled to take property is a defense to larceny.[9] Several cases subsequent to *Commonwealth* v. *White* borrow its use of the "honest and reasonable" phrasing. See *Commonwealth* v. *Gelpi*, 416 Mass. 729, 730-731 (1994); *Commonwealth* v. *Vives*, 447 Mass. 537, 540-542 (2006); *Commonwealth* v. *Anslono*, 9 Mass. App. Ct. 867, 867-868 (1980); *Commonwealth* v. *Larmey*, 14 Mass. App. Ct. 281, 283-285 (1982); *Commonwealth* v. *Newhook*, 34 Mass. App. Ct. 960 (1993).[10] However, in none of these cases did the defendant appear to have argued that reversal was warranted because the fact finder could have found that his belief, while perhaps objectively unreasonable, was nonetheless honestly

[9]In *Commonwealth* v. *White*, 5 Mass. App. Ct. at 485, the defendant, who had been charged with stealing money from his employer, testified that he had merely been collecting unpaid wages to which he was rightfully entitled. The defendant urged error in the trial judge's refusal to instruct the jury that he could not be guilty of larceny if he "believed that the money . . . was actually his money." *Ibid.* We agreed that the defendant was entitled to an instruction similar to the one he requested and therefore reversed the conviction. *Id.* at 488. Although we specifically commented that the defendant was entitled to an instruction that he should be acquitted of larceny if the jury concluded that he "honestly and reasonably believed" he was entitled to the money, the question whether an honest but unreasonable belief would likewise merit acquittal was not presented or considered, and the court's attention remained focused on the possibility of "an honest belief on the defendant's part." *Ibid.* Moreover, the "honest and reasonable" formulation was not accompanied by any analysis, explanation, or supporting citation to an appellate opinion. See *id.* at 486-488 (citing in this regard only *Commonwealth* v. *Low*, Thacher's Crim. Cas. 477, 485 [Boston Mun. Ct. 1837]).

[10]In incorporating the "honest and reasonable" formulation, the model jury instruction on larceny itself specifically cites to *Commonwealth* v. *White*, *supra*. See Criminal Model Jury Instructions for Use in the District Court, Instruction 8.520, Supplemental Instruction 7 (2009).

held.[11] Thus, neither we nor the Supreme Judicial Court have had occasion previously to consider the specific question currently before us. The majority has not identified any Massachusetts case that squarely holds that a belief in the right to take property must be reasonable to negate the intent to steal.

The "honest and reasonable" formulation adopted in *Commonwealth* v. *White* appears to derive from cases that involve defenses to general intent crimes. A defendant charged with such a crime may under some circumstances argue that, although the Commonwealth has proved all essential elements of the crime, he should not be convicted because he believed, albeit mistakenly, that facts existed which would have excused or justified his conduct. See, e.g., *Commonwealth* v. *Power*, 7 Met. 596, 602 (1844); *Commonwealth* v. *Presby*, 14 Gray 65, 68-69 (1859). In this context, a defense of this nature "requires that the accused act in good faith and with reasonableness." *Commonwealth* v. *Sherry*, 386 Mass. 682, 697 (1982). For example, the law does not excuse or justify criminal conduct based on an unreasonable belief in the need for force in defense of oneself or another. See, e.g., *Commonwealth* v. *Haddock*, 46 Mass. App. Ct. 246, 248-249 (1999).

However, with respect to specific intent crimes such as larceny, the context is markedly different. The question for the fact finder is not whether the defendant has behaved reasonably but instead whether he actually possessed the requisite mental state.[12] As noted, by definition, one cannot consciously intend to steal

[11]See *Commonwealth* v. *Gelpi*, 416 Mass. at 731 (defense counsel was ineffective in failing to request mistake of fact instruction); *Commonwealth* v. *Vives*, 447 Mass. at 540 (defendant claimed that judge's instruction on "honest and reasonable belief" improperly shifted burden of proof); *Commonwealth* v. *Anslono*, 9 Mass. App. Ct. at 867-868 (judge failed to give any meaningful instruction on larcenous intent); *Commonwealth* v. *Larmey*, 14 Mass. App. Ct. at 283 (judge failed to give any instruction on mistake of fact defense); *Commonwealth* v. *Newhook*, 34 Mass. App. Ct. at 961 (judge "did not adequately apprise the jury that the defense invoked by the defendant could negate the element of intent, or that it was the Commonwealth's burden to disprove the defense beyond a reasonable doubt").

[12]The majority emphasizes that a claim that one was entitled to the property taken is an "affirmative defense." To be sure, once the Commonwealth has presented a prima facie case, the burden is on the defendant to raise the issue. See *Commonwealth* v. *Vives*, 447 Mass. at 540-541. However, such a claim is not a "defense" in the sense that it provides a justification for the defendant's

property that he honestly believed he had a legal right to take. Allowing a larceny conviction even where a defendant honestly believed that the property had been abandoned would be tantamount to substituting mere negligence for specific intent. With regard to the crime of receiving stolen property, the Supreme Judicial Court has recognized the inappropriateness of allowing negligence to stand in for a higher mens rea. *Commonwealth* v. *Dellamano*, 393 Mass. 132, 138 (1984), quoting from *Commonwealth* v. *Boris*, 317 Mass. 309, 315 (1944) (holding that because guilty knowledge is element of crime of receiving stolen property, that crime "is not proved by negligence nor by failure to exercise as much intelligence as the ordinarily prudent man"). There is no reason why this same principle should not be applied to the specific intent crime of larceny.

We have previously explored this difference between specific and general intent crimes in the context of a mistake of fact defense that a defendant sought to raise in a rape case. As we explained in *Commonwealth* v. *Simcock*, 31 Mass. App. Ct. 184, 189 (1991), because rape is a general intent crime in Massachusetts, "[a] requirement for an instruction based upon one's actual mistake as to consent without regard to its reasonableness would be difficult to justify."[13] At the same time, however, we noted that were Massachusetts a jurisdiction where a rape conviction required proof of specific intent, an "honest belief (whether reasonable or not)" would suffice to negate that intent and mandate an acquittal. *Ibid.,* citing *Regina* v. *Morgan,* 1976 App. Cas. 182, 214 (English law). The same should follow in a prosecution for larceny, which does require proof of specific intent.

Although Massachusetts courts have not squarely addressed the question before us, courts in many other jurisdictions have

actions notwithstanding the Commonwealth's proof of the essential elements of the crime; instead it is an assertion that the Commonwealth has failed to prove all those elements. See *Commonwealth* v. *Lopez,* 433 Mass. at 725 n.3. The burden remains on the Commonwealth to prove beyond a reasonable doubt that the defendant in fact possessed the requisite intent. See *Commonwealth* v. *Vives, supra* at 541.

[13]See also *Commonwealth* v. *Lopez,* 433 Mass. at 728, where the Supreme Judicial Court observed that, because our rape statute requires no mens rea as to lack of consent, "[a]ny perception (reasonable, honest, or otherwise) of the defendant as to the victim's consent is . . . not relevant to a rape prosecution."

done so. There are at least fourteen jurisdictions whose courts have concluded that an honest belief in the right to take property, even if unreasonable, is inconsistent with an intent to steal.[14] For example, in a case very similar to the one at bar, a California appellate court reversed a defendant's conviction of stealing materials from a construction site because the trial judge erroneously instructed the jury that even if they concluded that the defendant honestly believed the materials were abandoned, they should still convict unless such a belief was reasonable. See *People* v. *Navarro*, 99 Cal. App. 3d Supp. 1, 11 (App. Dept. Super. Ct. 1979) (if the jury "concluded that defendant in good faith believed that he had the right to take the beams, even though such belief was unreasonable as measured by the objective standard of a hypothetical reasonable man, defendant was entitled to an acquittal since the specific intent required to be proved as an element of the offense had not been established"). In many other jurisdictions, courts have simply noted that an "honest" or "good faith" belief in the right to take property is incompatible with an intent to steal, without discussing the

---

[14]The cases, both ancient and modern, come from all areas of the country. See, e.g., *State* v. *Varszegi*, 33 Conn. App. 368, 373 (1993), quoting from 50 Am. Jur. 2d Larceny § 41 (Supp. 1993) ("A defendant who acts under the subjective belief that he or she has a lawful claim on property lacks the required felonious intent to steal. Such a defendant need not show his mistaken claim of right was reasonable, since an unreasonable belief that he had a right to take another's property will suffice so long as he can establish his claim was made in good faith"); *Charles* v. *State*, 36 Fla. 691, 701 (1895) ("[T]he good faith and honest belief of the defendant need not be such as would be entertained by a reasonable and prudent man, provided it was really honest and in good faith, and not a sham or pretense"); *Binnie* v. *State*, 321 Md. 572, 581 (1991) ("In short, under the circumstances and the factual situation presented by Binnie, it was within the province of the jury, not of the court, to determine whether Binnie should benefit from the honest belief defense, regardless of how dubious, suspect, farfetched, and incredible Binnie's account may have appeared to the trial judge"); *People* v. *Karasek*, 63 Mich. App. 706, 711 (1975) ("A felonious intent is an inseparable and essential ingredient of every larceny, and if a person takes property under a claim of right, however[] unfounded, he is not guilty of the offense" [citation omitted]). See also *State* v. *Abbey*, 13 Ariz. App. 55, 57 (1970); *People* v. *Romo*, 220 Cal. App. 3d 514, 518 (1990); *State* v. *Cavness*, 80 Haw. 460, 465-466 (Ct. App. 1996); *Stuart* v. *People*, 73 Ill. 20, 22 (1874); *State* v. *Sexton*, 160 N.J. 93, 101-102 (1999); *People* v. *Zona*, 14 N.Y.3d 488, 493 (2010); *State* v. *Lawrence*, 262 N.C. 162, 168 (1964); *Tate* v. *State*, 706 P.2d 169, 171 (Okla. Crim. App. 1985); *Green* v. *State*, 153 Tex. Crim. 442, 449 (1949); *State* v. *Ward*, 151 Vt. 448, 451-452 (1989).

issue of reasonableness.[15] Neither the Commonwealth nor the majority has identified any case holding that a defendant may be found to possess the specific intent to steal property that he honestly believed he had the legal right to take.[16] We are now the first appellate court anywhere to reach that conclusion.

The case law is consistent with the major commentators on the criminal law. As one leading treatise states, "[t]here is no such thing in the common law as larceny by negligence. One does not commit this crime by carrying away the chattel of another in the mistaken belief that it is his own, no matter how great may have been the fault leading to this belief, if the belief itself is genuine." Dripps, Boyce, & Perkins, Criminal Law & Procedure 868 (12th ed. 2013). Accord American Law Institute, Model Penal Code and Commentaries § 2.04 (1985); *id.* at § 223.1(3) (1980); LaFave, Substantive Criminal Law § 5.6(b) (2d ed. 2003); Robinson, Criminal Law Defenses § 62(b) (1984); Torcia, Wharton's Criminal Law § 78 (15th ed. 1993). See also Nolan & Sartorio, Criminal Law § 686, at 722 (3d ed. 2001) ("If a person honestly but mistakenly believes that the property which he is taking from the victim by force or fear is his own, this element [intent to steal] is not present, and he cannot be

---

[15]See, e.g., *Lee* v. *State*, 102 Ga. 221, 223-224 (1897); *State* v. *Snowden*, 7 Ohio App. 3d 358, 362-363 (1982); *Butts* v. *Commonwealth*, 145 Va. 800, 812 (1926).

[16]In some jurisdictions, reasonableness is required by statute, at least under some circumstances. See, e.g., Or. Rev. Stat. § 164.035(1) (2011) (providing defense if defendant "reasonably believed that [he] was entitled to the property involved" or if he "was unaware that the property was that of another"); 18 Pa. Cons. Stat. Ann. § 304 (West Supp. 2013) (mistake only a defense if it has "reasonable explanation or excuse"). However, even in one such jurisdiction, an appellate court has held that an unreasonable mistake would preclude a conviction for theft if it negated the specific intent to steal. See *Green* v. *State*, 153 Tex. Crim. 442, 445, 449 (1949). Similarly, in *State* v. *Sexton*, 160 N.J. 93 (1999), the New Jersey Supreme Court concluded that under New Jersey's mistake of fact statute, which contains language requiring a mistaken conclusion to be "reasonably arrived at" in order to furnish a defense, *id.* at 103, a negligent or reckless mistake would be considered "reasonable" if the crime charged required proof of a greater culpability than negligence or recklessness, respectively. *Id.* at 105-107. Therefore, a defendant charged with a crime requiring proof of intent to steal would be entitled to an acquittal if he negligently or recklessly took someone else's property, notwithstanding the fact that negligent or reckless conduct is ordinarily considered "unreasonable." *Ibid.*

found guilty of robbery"). See generally 50 Am. Jur. 2d Larceny § 42 (2006).

In sum, in my view, the nature of larceny as a specific intent crime and the overwhelming weight of authority support the defendant's view of the law. I therefore believe that where a defendant puts at issue his belief that the property he took had been abandoned, see note 12, *supra*, the Commonwealth must prove that the defendant "knew that he had no right to the property taken," *Commonwealth* v. *Souza*, 397 Mass. at 238, quoting from *Commonwealth* v. *Kiernan*, 348 Mass. at 50, not merely that a reasonable person in the defendant's position would have known. To the extent there is contrary dicta in *Commonwealth* v. *White*, 5 Mass. App. Ct. at 486-488, and subsequent cases, I believe such statements are erroneous and should be corrected.

None of this discussion is to suggest that the objective unreasonableness of a defendant's professed belief therefore would be beside the point. Under a proper view of the law, a fact finder would remain free to consider the reasonableness of a defendant's claims, and indicia of unreasonableness might well provide convincing evidence that a defendant's professed belief was not in fact honestly held. See *People* v. *Navarro*, 99 Cal. App. 3d Supp. at 11 ("[I]f the jury thought the defendant's belief to be unreasonable, [they] might infer that he did not in good faith hold such belief").[17] Objective reasonableness and unreasonableness therefore would continue to play an important evidentiary role, and in a jury trial, the Commonwealth would be entitled to an instruction that the jury may weigh the objective reasonableness of a defendant's professed belief in considering whether it was

---

[17]As in any other case where a defendant's state of mind is at issue, a jury in a case such as this one must assess the defendant's credibility in light of all the facts and circumstances and determine whether the Commonwealth has proved beyond a reasonable doubt that he possessed the requisite mens rea. See *Commonwealth* v. *Keefner*, 461 Mass. 507, 517 (2012). The majority's concern, *ante* at 391, that a fact finder will be "compelled" to acquit a defendant merely because he claims to have held an honest belief in the right to take property is misplaced. A jury are no less equipped to evaluate a claim that a defendant honestly believed that property was abandoned than, for example, a claim that he did not know certain property was stolen, see *Commonwealth* v. *Dellamano*, 393 Mass. at 136-137, or that he did not know that a coventurer was armed, see *Commonwealth* v. *Bolling*, 462 Mass. 440, 453-454 (2012).

genuinely held. However, if a fact finder did conclude that the defendant's belief, though objectively unreasonable, was honestly held, then — in my view — he would be entitled to an acquittal.

As noted, the judge in this case indicated that he was resting the guilty finding on his view that any belief by the defendant that the property had been abandoned would not have been reasonable in the circumstances. As a result, the defendant was convicted without any determination by the fact finder that he possessed the specific intent to steal. I therefore would vacate the judgment and set aside the guilty finding.[18]

---

[18]Of course, in any new trial, see note 1, *supra*, it would be up to the fact finder to evaluate the extent to which the defendant's factual claims should be credited.